No. 107,422

STATE OF KANSAS, *Appellee*, v. CODY STEVEN FUNK, *Appellant*.

(349 P.3d 1230)

Opinion filed May 15, 2015.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, argued the cause and was on the briefs for appellant.

*Robert A. Walsh*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Cody Steven Funk appeals from the imposition of lifetime postrelease supervision following his guilty plea and con-

viction of one count of attempted indecent solicitation of a child. His plea arises from criminal charges filed against him following his sexual encounter with a 14-year-old girl. Funk contends lifetime postrelease supervision is disproportionate as applied to him, constituting cruel and/or unusual punishment in violation of Section 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. Both the district court and Court of Appeals rejected his arguments. See *State v. Funk*, No. 107,422, 2013 WL 1444718 (Kan. App. 2013) (unpublished opinion), *rev. granted* October 13, 2013. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, Funk was charged with one count of criminal sodomy, a severity level 3 person felony, in violation of K.S.A. 21-3505. Pursuant to a plea agreement, Funk pleaded guilty to one count of attempted indecent solicitation of a child, a severity level 8 person felony, which carried a lower severity level for sentencing purposes. See K.S.A. 21-3510(a)(1) (enticing, commanding, inviting, persuading, or attempting to persuade a child 14 or more years of age but less than 16 years of age to commit or submit to an unlawful sexual act); K.S.A. 2010 Supp. 21-3301 (attempt; overt act towards perpetrating a crime). Funk's presentence investigation report revealed one prior nonperson felony conviction for burglary and two prior nonperson misdemeanor theft convictions. He was on probation for the burglary conviction when he committed the offense in this case.

Funk filed a motion seeking probation rather than imprisonment. In support of this, he attached a portion of the victim's testimony at a preliminary hearing in another case pending against a different defendant. Funk had waived a preliminary hearing in his case. The district court sentenced him to 18 months' probation, with an underlying 10-month prison term and lifetime postrelease supervision. The district court also required Funk to register as a sex offender for 10 years.

Funk objected to the imposition of lifetime postrelease supervision, and the district court granted him 30 days to submit a motion challenging the constitutionality of the lifetime postrelease su-

pervision. No evidence was presented at a postsentencing hearing, although Funk's counsel and the State argued the merits. Funk claimed lifetime postrelease supervision was disproportionate as applied to him and, therefore, constituted cruel and/or unusual punishment under Section 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. Importantly, defense counsel noted that appellate courts had declined to review these types of constitutional claims because of inadequate findings and urged the district court to make adequate findings—despite the failure to offer evidence on Funk's behalf.

In rejecting Funk's objection, the district court made factual findings based on the preliminary hearing transcript attached to Funk's motion seeking probation, as well as a probable cause affidavit in the case file that contained police accounts of witness statements. From those sources, the district court found:

"1. On the night of November 6, 2010, the Defendant, Cody Funk and at least three other young men, ages 18 to 20, engaged in sexual acts with a 14 year old girl, HD.

"2. On the night in question, two of the young men, Julio Mendoza and Kohlton Kumnick, met HD at a local convenience store. HD had been in a fight with her friends and rode around town with the two young men. Eventually they arrived at Kumnick's dorm apartment.

"3. Funk and Justin Lord were at Kumnick's apartment when HD, Mendoza and Kumnick arrived.

"4. Mendoza brought out a bottle of alcohol. All four men consumed the Bacardi and urged HD to drink also. HD drank steadily and quickly from the bottle. HD and the four men also 'huffed' from an aerosol can.

"5. At that point in the evening, all four men believed HD to be 16 years old based upon what she told them.

"6. Sometime during the evening, a friend stopped by the dorm apartment and observed HD in the bedroom with Mendoza, Funk and Lord. This individual told Kumnick she recognized HD as a freshman in high school and warned Kumnick that HD was too young to be at the dorm apartment.

"7. After drinking alcohol and huffing air duster, HD began kissing Mendoza and Lord. Funk was sitting on a bed opposite of HD with a computer on his lap.

"8. Eventually, HD and Mendoza engaged in sexual intercourse on the bed opposite of Funk. Funk remained in the bedroom working on his computer but could hear HD and Mendoza engaging in sexual acts.

"9. After some time, HD approached Funk and undid his pants. HD performed oral sex on Funk while Mendoza penetrated HD from behind either vaginally or anally. HD then performed oral sex on Kumnick.

"10. Eventually the group dressed and went to a party where further inappropriate sexual conduct occurred."

After setting out its findings of fact, the district court acknowledged the legal issues in the case were governed by the three *Freeman* factors. See *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). But despite this, its analysis did not follow the *Freeman* outline and was limited to the following:

"Based upon a review of the facts, the controlling statutes, and case law, this Court finds it is without authority to grant Funk's motion to depart from the statutorily required imposition of life time post release supervision. The Court notes, however, that the facts of this case clearly reflect the injustice of life time post release supervision. An 18 year old young man who allowed a 14 year old girl to voluntarily perform oral sex upon him, without request or force, will suffer the consequences of these actions for the remainder of his adult life."

Parenthetically, we note also that although the district court characterized Funk as an 18-year-old man in its legal conclusion, it made no specific factual finding regarding Funk's age. Our appellate record contains Funk's birth year, but it does not identify the month or day, so we cannot confirm whether he was 18 years old when the crime was committed as mentioned by the district court or 18 or 19 as stated by the panel. It is also unclear from the district court's findings whether Funk believed H.D. was 16 at the time the crime occurred. The court's only findings were that Funk initially believed H.D. was 16 years old and at least one of the men was later told that she was younger.

Funk filed an untimely notice of appeal, but the Court of Appeals retained jurisdiction after the district court found Funk's attorney failed to perfect the appeal. See *Funk*, 2013 WL 1444718, at *3; see also *State v. Ortiz*, 230 Kan. 733, 735-36, 640 P.2d 1255 (1982) (noting limited exceptions to general rule that timely filing of notice of appeal is jurisdictional).

*The Court of Appeals Opinion*

In contrast to the district court's more limited review, the Court of Appeals set out and applied the *Freeman* factors individually in addressing Funk's Section 9 challenge. *Funk*, 2013 WL 1444718, at *5-11. The panel found the first factor, under which a court examines the nature of the offense and the character of the offender, weighed neither in favor of nor against finding the sentence unconstitutional. The panel observed: "Kansas appellate courts have consistently found that the first *Freeman* factor weighs against defendants convicted of sex offenses against children." *Funk*, 2013 WL 1444718, at *7.

In support of this, the panel referenced this court's decisions in *State v. Ross*, 295 Kan. 424, 284 P.3d 309 (2012), *State v. Mossman*, 294 Kan. 901, 281 P.3d 153 (2012), and *State v. Cameron*, 294 Kan. 884, 281 P.3d 143 (2012), as well as several Court of Appeals opinions in which the first *Freeman* factor weighed against the defendant. *Funk*, 2013 WL 144718, at *8 (citing *State v. Black*, No. 104,728, 2013 WL 517596 [Kan. App. 2013] [unpublished opinion, *rev. denied* 297 Kan. 1248 (2013)]; *State v. Rowley*, No. 104,680, 2013 WL 451886 [Kan. App. 2013] [unpublished opinion, *rev. denied* 297 Kan. 1254 (2013)]; *State v. Collins*, No. 105,523, 2012 WL 5519088 [Kan. App. 2012] [unpublished opinion, *rev. denied* 297 Kan. 1249 (2013)]; *State v. Genzel*, No. 106,136, 2012 WL 5519176 [Kan. App. 2012] [unpublished opinion, *rev. denied* 297 Kan. 1250]). The panel concluded that "[a]lthough these cases involve facts that arguably are more egregious than Funk's case, they demonstrate Kansas appellate courts' deference to the legislature's policy decision to treat sex offenses against children as sexually violent crimes regardless of the facts of the offense." *Funk*, 2013 WL 1444718, at *8.

Turning to the case-specific facts, the panel noted those weighing in Funk's favor were: (1) his age, H.D.'s age, and that H.D. represented she was 16, which Funk might not have known to be untrue when the crime occurred; (2) there was little evidence Funk encouraged or coerced H.D. into drinking for the purpose of taking advantage of her; (3) Funk did not "knowingly [take] advantage of

the age and experience difference between himself and H.D. or H.D.'s status as a minor"; (4) Funk's criminal history did not suggest any future threat of a sexual or violent nature; and (5) Funk did not request or force the sexual contact. 2013 WL 1444718, at *8. The panel then determined that the facts weighing in the State's favor were: (1) Kansas appellate courts consider sex offenses as serious and should be treated accordingly, even if the minor consented to the activity and there was no violence involved in the commission of the offense; (2) Funk's criminal history suggested some future risk to society; and (3) lifetime postrelease supervision advanced the legitimate penological goals of deterrence, incapacitation, and rehabilitation. 2013 WL 1444718, at *9.

Citing *Mossman*, the panel then determined "it is reasonable to conclude" the second and third *Freeman* factors weigh in the State's favor. *Funk*, 2013 WL 1444718, at *10. As to the second factor, which considers the sentence's comparative harshness for the defendant's crime of conviction and for more serious Kansas offenses, the panel reasoned that while Funk's cumulative sentence due to the lifetime postrelease supervision was longer than those he would have faced for some other higher severity level nonchild sex crimes that carry shorter postrelease supervision terms, his actual period of incarceration was much shorter and lifetime postrelease imposes a lesser restriction on his freedom than incarceration. The panel rejected Funk's argument that the supervision term is disproportionate based on the potential life-without-parole sentence he might face if convicted of another serious offense during the supervision term. 2013 WL 1444718, at *9-10.

As to the third factor, which considers the punishment's severity compared to the same offense in other jurisdictions, the panel relied exclusively on what it described as *Mossman*'s "extensive survey of punishments imposed in other jurisdictions for similar sex offenses against children" and its conclusion that "while Kansas' sentencing scheme mandating lifetime postrelease supervision is more severe than most other jurisdictions, that fact alone does not mean that lifetime postrelease supervision is disproportionate under the third *Freeman* factor." *Funk*, 2013 WL 1444718, at *10.

The panel concluded that "[t]he *Mossman* rationale is equally applicable to Funk's case." 2013 WL 1444718, at *10.

In its ultimate weighing of all three factors, the panel held the district court did not err in ruling the lifetime postrelease supervision term was not disproportionate under the facts. Consequently, the panel concluded the sentence was not cruel or unusual under Section 9 of the Kansas Constitution Bill of Rights. 2013 WL 1444718, at *11.

In a separate analysis, the panel rejected Funk's proportionality challenge under the Eighth Amendment, applying the test set out by the United States Supreme Court in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). The panel first noted that Funk failed to suggest any basis for finding an Eighth Amendment violation if his Section 9 challenge failed and that the *Freeman* factors suggested the Eighth Amendment claim must also fail. *Funk*, 2013 WL 1444718, at *11. Then, the panel concluded under *Graham*'s first prong that a comparison between the gravity of Funk's offense—in particular, that it was a sex offense against a child—and the severity of the lifetime postrelease supervision term did not raise an inference of gross disproportionality. Accordingly, the panel held the sentence was not cruel and unusual under the Eighth Amendment. 2013 WL 1444718, at *11.

Funk timely filed a petition for review, which this court granted. Jurisdiction is proper. See K.S.A. 2014 Supp. 60-2101(b) (jurisdiction to review court of appeals decision upon petition for review); accord K.S.A. 20-3018(b).

### ANALYSIS

At the outset, we must identify what issues Funk raises in his petition for review because it focuses on the *Freeman* analysis governing a Section 9 analysis and makes no substantive argument regarding the panel's Eighth Amendment holding. We consider that first and determine that only the Section 9 challenge is before us.

*Eighth Amendment Issue Preservation*

As discussed, the Court of Appeals specifically addressed the Eighth Amendment issue by using the United States Supreme Court's test from its *Graham* decision. In doing so, the panel explained the consideration of proportionality under the Eight Amendment's *Graham* test was similar to the considerations upon which the Section 9 *Freeman* factors are based, but it added that the Eighth Amendment analysis "differs slightly in application." *Funk*, 2013 WL 1444718, at *5 (citing *State v. Gomez*, 290 Kan. 858, 863-64, 235 P.3d 1203 [2010]). The panel then quoted a passage from *Gomez* describing the Eighth Amendment application under the *Graham* test and made clear it was using the *Freeman* factors for the Section 9 analysis while using the *Graham* test as it had described it to decide Funk's case-specific proportionality challenge under the Eighth Amendment. *Funk*, 2013 WL 1444718, at *6.

The preservation problem is that Funk's petition for review makes no mention of the panel's application of the *Graham* test and there is no supplemental briefing following our granting of review that would indicate there remains an Eighth Amendment challenge. Indeed, Funk makes no mention of *Graham* in any of his appellate briefs and only refers generally to *Gomez* when discussing the *Freeman* factors. And regardless of whether there is a legal equivalence between the Section 9 analysis and the *Graham* test, the panel perceived a difference in how it handled these two issues. This court then is left to speculate whether Funk disagrees with how the panel decided the Eighth Amendment question. Adding to this quandary, Funk's petition for review articulates as the question presented as whether "the Court of Appeals gave sufficient weight to the nature of the offense, the danger to society that the Defendant represented, and the nonviolent nature of the offense in proportioning the elements of the *Freeman* factors." This seems to point us to *Freeman* rather than the Eighth Amendment.

Since the Court of Appeals disposed of Funk's Eighth Amendment claim through *Graham*, and with Funk focusing his petition for review on *Freeman*, Funk has failed to adequately address the

panel's Eighth Amendment analysis if that was his intention. An issue not adequately briefed is deemed abandoned. *State v. Hilt*, 299 Kan. 176, 191, 322 P.3d 367 (2014); see also Supreme Court Rule 8.03(a)(4)(C) (2014 Kan. Ct. R. Annot. 78) ("The court will not consider issues not presented or fairly included in the petition [for review]."). Therefore, we will limit our review to the Section 9 challenge.

*Standard of Review for Section 9 Analysis*

Whether a sentence is cruel or unusual in violation of Section 9 of the Kansas Constitution Bill of Rights encompasses both legal and factual determinations. *Mossman*, 294 Kan. at 906 (citing *State v. Ortega-Cadelan*, 287 Kan. 157, 160, 194 P.3d 1195 [2008]). On appeal, a district court's factual findings are reviewed for substantial competent evidence. The appellate court reviews but does not reweigh the evidence. The legal conclusions drawn from the factual findings are considered de novo. *Mossman*, 294 Kan. at 906 (citing *State v. Gant*, 288 Kan. 76, 80, 201 P.3d 673 [2009]; *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 [2007]). In addition, we consider an attack on lifetime postrelease supervision imposed under K.S.A. 2014 Supp. 22-3717(d)(1)(G) as an indirect attack on the statute's constitutionality as applied. "[I]f there is any reasonable way to construe the statute as constitutional, courts have the duty to do so by resolving all doubts in favor of constitutionality." *Mossman*, 294 Kan. at 906-07 (citing *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 [2009]).

*Discussion*

In Kansas, the State may not inflict cruel or unusual punishment upon persons convicted of crimes. Kan. Const. Bill of Rights, § 9. This prohibition includes any punishment that "although not cruel or unusual in its method . . . [is] so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *Freeman*, 223 Kan. at 367; see *Gomez*, 290 Kan. 858, Syl. ¶ 9. Funk argues lifetime postrelease supervision is so disproportionate under the facts in his case that it violates Section 9.

State law mandates lifetime postrelease supervision for certain sex offenses committed on or after July 1, 2006, including the crime to which Funk pleaded guilty (attempted indecent solicitation of a child) and the crime to which he was originally charged (criminal sodomy). See K.S.A. 2010 Supp. 22-3717(d)(1)(G); K.S.A. 2010 Supp. 22-3717(d)(2)(D), (F), and (K). Mandatory lifetime postrelease supervision becomes effective when an offender completes the prison portion of a criminal sentence and is released to the community, subject to conditions imposed by the Kansas Parole Board (now the Kansas Prisoner Review Board) and to the Secretary of Correction's supervision. See K.S.A. 21-4703(p). This includes a general requirement that the offender cannot commit a new criminal offense and may include other conditions such as payment of costs, fines, and restitution; completing educational requirements; performing community service; reporting to a supervising office; and abiding by other special conditions allowed by administrative regulations and orders. See K.S.A. 21-4703(p); K.S.A. 2010 Supp. 22-3717(m); *Mossman*, 294 Kan. at 904. As the Court of Appeals panel further explained the process:

"If there is probable cause to believe that an offender on postrelease supervision has violated the conditions of release, the Secretary of Corrections may either dismiss the charges and order the offender to remain on postrelease supervision or may order a hearing before the prisoner review board (a unit within the Department of Corrections) on the violations charged. If a violation is established to the satisfaction of the prisoner review board after considering all pertinent evidence, the board may reinstate, modify, or revoke postrelease supervision. If the violation is based on a new conviction, the only consideration for the board is whether the new conviction warrants revocation of postrelease supervision. [Citations omitted].

"If postrelease supervision is revoked for any reason other than a new conviction, the offender shall serve a 6-month period of confinement. But if postrelease supervision is revoked due to a new conviction, the offender 'shall serve the entire remaining balance of the period of postrelease supervision' if the new conviction is for a felony or 'shall serve a period of confinement, to be determined by the prisoner review board, which shall not exceed the remaining balance of the period of postrelease supervision' if the new conviction is for a misdemeanor. [Citations omitted]." *Funk*, 2013 WL 1444718, at *4-5.

To determine whether a sentence's length is unconstitutionally disproportionate to the crime for which that sentence is imposed,

Kansas courts consider the three factors commonly known as the *Freeman* factors:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

See *Mossman*, 294 Kan. at 908.

No one factor is individually controlling and " 'consideration should be given to each prong of the test,' " but one factor may " 'weigh so heavily that it directs the final conclusion." *Mossman*, 294 Kan. at 908 (quoting *Ortega-Cadelan*, 287 Kan. at 161). When considering proportionality, " 'the factual aspects . . . are a necessary part of the overall analysis.' " 294 Kan. at 908 (quoting *Ortega-Cadelan*, 287 Kan. at 161).

*First* Freeman *Factor*

Funk places his emphasis on the first factor—the nature of the offense and character of the offender. Indeed, he frames his issue on review as whether the panel gave this factor appropriate weight.

The district court's factual findings dealt entirely with the circumstances of the crime. It found that Funk, H.D. (the victim), and at least three other men had been drinking alcohol and "huffing" from an air duster aerosol can; all four men urged H.D. to drink; all the men were aged 18-20; Funk believed H.D. to be 16 years old when the group began drinking alcohol and huffing aerosol; someone informed one of the men H.D. was only 14; after Mendoza had intercourse with H.D. in Funk's presence, she approached Funk, undid his pants, and performed oral sex on him while another man had intercourse with her from behind; and after the sexual activity at the apartment, the group dressed and went to a party where further inappropriate sexual conduct occurred.

The district court made no finding as to whether Funk still believed H.D. was 16 when he allowed her to perform oral sex on him.

Notably, neither party argues these factual findings are not supported by substantial competent evidence despite the fact that there was no evidence presented at the hearing challenging lifetime postrelease supervision. And this failure is particularly concerning because Funk entered a guilty plea to a lesser crime and even the most basic facts regarding his criminal conduct were never stipulated to or otherwise admitted into evidence. Nevertheless, we will treat the district court's factual findings as supported by substantial competent evidence because neither party challenged the basis of the court's findings. See *State v. Waller*, 299 Kan. 707, Syl. ¶ 5, 328 P.3d 1111 (2014) ("An issue not briefed is deemed waived and abandoned.").

Funk argues this first factor weighs in his favor based on his view that H.D. instigated the sexual contact, as well as the characterization that he was a passive participant in the incident, the lack of evidence that H.D. suffered physical injury or was in therapy as a consequence of Funk's conduct, and the lack of evidence that Funk "is a pedophile or has a history of abhorrent sexual behavior." Adding to this, we note the district court made the determination to grant Funk probation, which might be seen to add to circumstances weighing in Funk's favor. See *State v. Proctor*, No. 104,697, 2013 WL 6726286, at *4 (Kan. App. 2013) (unpublished opinion) (*Proctor II*) (district court's determination that probation was warranted is "difficult to meld with the harshest component of lifetime postrelease supervision").

In response, the State contends the first factor weighs in its favor because Kansas has a significant interest in preventing sex between adults and minors, particularly because minors cannot legally give informed, mature consent. Moreover, the State argues that despite Funk's claim that H.D. initiated the sexual contact, she was "strongly encouraged, if not pressured and coerced, to consume . . . alcohol . . . [f]or the purpose of overcoming any will power she may have had to resist the sexual assaults . . . ." And the State contends Funk's prior burglary and theft convictions, as well as his

probation violation resulting from this crime, "paint a disturbing picture of Funk's character."

Funk relies on a comparison between his case and *State v. Proctor*, 47 Kan. App. 2d 889, 280 P.3d 839 (2012) (*Proctor I*), in which the Court of Appeals held defendant's lifetime postrelease supervision sentence was unconstitutional under Section 9 of the Kansas Constitution Bill of Rights. But *Proctor I* was summarily reversed and remanded to the Court of Appeals, and a new opinion was issued in which the Court of Appeals reached the same result. See *Proctor II*, 2013 WL 6726286, at *5.

The defendant in *Proctor II* was 19 years old and had on multiple occasions "cajoled [a 12-year-old family friend] into having manual and oral contact with [his] penis." 2013 WL 6726286, at *2. In concluding the first *Freeman* factor weighed in the defendant's favor, the *Proctor II* court relied upon "[t]he district court's determination that the circumstances of Proctor's offense warranted probation"; the prospect of a lifetime prison sentence for a future felony conviction for "writing a worthless check or shoplifting a high-end iPad;" the defendant's young age and lack of criminal record at the time of the crimes; the lack of evidence the defendant was "a serial sex offender with a trail of victims;" and Proctor's history of sexual abuse during adolescence, which was a trauma that went untreated. 2013 WL 6726286, at *4-6. The court distinguished cases in which the first *Freeman* factor weighed against persons convicted of sex crimes on the grounds that the defendants in the prior cases had not been victims of sexual abuse and "plainly were not replicating conduct that had been directed toward them." *Proctor II*, 2013 WL 6726286, at *5 (discussing *Mossman* and *Cameron*). And although it believed these facts supported its conclusion that the first factor weighed in the defendant's favor, the court noted the circumstances would be different if the defendant had a prior criminal record for serious offenses. *Proctor II*, 2013 WL 6726286, at *5.

The *Proctor II* court further concluded the penological purposes of lifetime postrelease supervision were not served under the facts before it, noting " 'Proctor was himself a victim of sexual abuse in his early adolescence but apparently never received counseling. He

had also not been through any sort of treatment program for sex offenders. Information submitted to the district court at sentencing indicated Proctor would likely benefit significantly from such a program.'" 2013 WL 6726286, at *2. And building on the possibility under the postrelease supervision scheme of lifetime incarceration for a future crime, the *Proctor II* court believed the defendant's history of untreated sexual abuse and amenability to treatment "suggest a defendant who, as the district court found, would very likely benefit from mental health therapy and counseling and sex offender treatment more than from incarceration." 2013 WL 6726286, at *4. The court further reasoned that lifetime postrelease supervision "ceases to promote rehabilitation if an offender is returned to prison for life for a felony conviction." 2013 WL 6726286, at *6.

In his briefing to this court, Funk compares the facts of his crime with the facts in *Proctor I* and rhetorically asks: "What purpose . . . would it serve for [Funk] to serve the rest of his life in prison under the tepid facts of this case?" This point is based on the possibility that if Funk were convicted in the future of another felony, state law requires he "serve [imprisonment for] the entire remaining balance of the period of postrelease supervision," *i.e.*, life. See K.S.A. 2014 Supp. 75-5217(b)-(d). But the short answer is to recall that we have already disavowed considering what might happen if a defendant happens to commit a subsequent felony. See *Mossman*, 294 Kan. at 915-16 (distinguishing between the potential consequences for violating postrelease supervision conditions by committing new felony and those for the crime actually committed, *i.e.*, imposition of lifetime postrelease supervision).

As to Funk's arguments based on his own character, *i.e.*, the lack of evidence he is a pedophile or has a history of sex offenses, these are not persuasive. Funk presented no evidence about his background or his risk of recidivism. See *Proctor II*, 2013 WL 6726286, at *5 (lifetime postrelease supervision unconstitutionally disproportionate as applied based in part on defendant's showing he was sexually abused himself and expert testimony indicating he would benefit from therapy and was not a likely future offender); see also *Mossman*, 294 Kan. at 911 (discussing evidence of psychological

assessment that noted defendant's lack of criminal history, low recidivism score, acceptance of responsibility for criminal conduct, and appropriate level of remorse). In addition, the district court made no factual findings relevant to those claims. We have no way of determining his risk of recidivism, whether therapy could help, or any other personal characteristics.

In the absence of evidence as to Funk's character, such as that presented in *Proctor II*, and factual findings based on that evidence—which the *Proctor II* court believed to undermine the penological rationales for imposing lifetime postrelease supervision—we adhere to our previous observation that "[p]ostrelease supervision is largely designed to act as a deterrent to future crime, a goal that is particularly legitimate given sex offenders' higher rate of recidivism." *Mossman*, 294 Kan. at 911 (defendant presented evidence of low score on test designed to predict risk of recidivism, but evidence countered by expert's concerns about defendant's rebellious character and lack of impulse control); see also *State v. Toahty-Harvey*, 297 Kan. 101, 108, 298 P.3d 338 (2013) (rejecting argument that defendant's character, *i.e.*, mild manner and low IQ outweighed nature of offense); *Cameron*, 294 Kan. at 892 (noting defendant's alcohol consumption was more significant causative factor in crimes than defendant's proclivity to engage in sexual activities with children).

Indeed, the *Proctor II* court noted "[t]he circumstances would be different if [the defendant] had juvenile adjudications or criminal convictions for serious offenses, whether or not they were sexually based . . . ." 2013 WL 6726286, at *5. Here, Funk does have a record of serious criminal conduct—most strikingly, a felony burglary conviction for which he was on probation when he committed the offense against H.D.

We are left considering the district court's findings as to the facts of the crime and Funk's claims about H.D.'s role in instigating the contact, the lack of harm to H.D., and Funk's belief H.D. was 16. We hold these do not tip the first *Freeman* factor in Funk's favor. Illegal sexual intercourse with a minor is a serious offense, and the victims of those crimes are legally considered incapable of consenting to such acts. Accordingly, this court has previously found

unpersuasive arguments similar to Funk's claim that the minor victim initiated the sexual contact. See *Mossman*, 294 Kan. at 910 (defendant alleged sex acts with 15-year-old victim were consensual). And to the extent Funk argues H.D. was not harmed, we have also rejected similar arguments based on a supposed lack of physical harm to the victim, observing:

"[I]t is generally recognized that society has a penological interest in punishing those who commit sex offenses against minors because they 'present a special problem and danger to society' and their actions produce ' "particularly devastating effects" ' on victims, including physical and psychological harm. [Citations omitted.] . . . The State's vital interest in protecting minors from sex activities explains the legislative decision to treat sex crimes against minors as . . . forcible or violent felon[ies] even if no physical force is involved." *Mossman*, 294 Kan. at 909.

See also *Toahty-Harvey*, 297 Kan. at 107-08 (lifetime postrelease supervision after conviction of aggravated indecent liberties with a child based on skin-to-skin contact between defendant's hand and "area of" 12-year-old victim's genitalia); *Cameron*, 294 Kan. at 892 (first factor weighed against defendant in challenge imposed for aggravated indecent solicitation of a child). In addition, Funk's claimed belief that H.D. was 16 at the time is a fact question left unresolved by the district court and therefore cannot factor into our analysis. See *State v. Seward*, 289 Kan. 715, 720-21, 217 P.3d 443 (2009) (litigant who fails to object to inadequate findings and conclusions foreclosed from making appellate argument based on what is missing) (*Seward I*).

Given the district court's factual findings, we hold the first *Freeman* factor does not heavily favor Funk as he claims. He and his roommates, who themselves were not old enough to possess or consume alcohol, invited a 14-year-old girl into their living quarters. He encouraged her to use illegal intoxicants. And despite being given the opportunity to do so, Funk presented no evidence to demonstrate how the deterrent goals of lifetime postrelease supervision would not be served in his case due to personal characteristics, such as his own relative youth, that might make him less likely to commit sex crimes in the future. The absence of such evidence is all the more damaging because he was already on pro-

bation for a felony at the time he committed the offense against H.D. and that obviously was insufficient to deter him from the criminal conduct for which the lifetime postrelease supervision period was imposed.

*Second* Freeman *Factor*

The second *Freeman* factor directs the court to compare the punishment for Funk's offense with punishments imposed in Kansas for more serious offenses. *Mossman*, 294 Kan. at 912. If the review reveals more serious crimes are punished less severely than Funk's offense, "the challenged penalty to that extent is suspect." *Freeman*, 233 Kan. at 367. The court considers whether the sentence imposed on the defendant is grossly disproportionate in relation to the sentence for the more serious offense, considering the penological purposes of the sentence under review, the seriousness of defendant's crime, and other considerations under the first *Freeman* factor. See *Mossman*, 294 Kan. at 917.

Funk relies on a criminal penalties survey he presented to the district court, which identified 22 offenses severity level 1-4 that carry only a 36-month postrelease supervision term. Included within these offenses are aggravated human trafficking, electronic solicitation of a child, and second-degree murder. Funk's offense carried only a 9- to 11-month prison sentence and presumptive probation for a person with his criminal history score; however, the 22 offenses he identifies carry much longer prison terms of 38 to 653 months.

But this comparison is not persuasive because the proportionality of Funk's sentence cannot be judged solely by comparing his lifetime postrelease supervision period to that imposed for other crimes. See 294 Kan. at 913-14. A more apt comparison is that Kansas imposes a more serious punishment for more serious sex crimes. See, *e.g.*, K.S.A. 2014 Supp. 21-5506(b)(1) (aggravated indecent liberties—sexual intercourse with child 14 or 15 years old—is a severity level 3 felony); K.S.A. 2014 Supp. 21-6804 (severity level 3 felony carries minimum term of 55 months' imprisonment); K.S.A. 2014 Supp. 22-3717(d)(1)(G), (d)(5)(C) (defendant convicted of aggravated indecent liberties subject to lifetime post-

release supervision). And Funk does not point to any specific crime which, compared to his, is both more serious and punished less severely. Even the more serious sex crimes that carry the same supervision period are still punished more severely because they are subject to longer prison sentences. We hold the panel correctly applied *Mossman* to conclude the second factor does not weigh in Funk's favor.

### *Third* Freeman *Factor*

Finally, we compare the challenged punishment with punishments in other jurisdictions for the same offense. Funk focuses not on other states' punishment for his crime, but on his survey of other jurisdictions' use of postrelease supervision to punish sex offenders as a class. Addressing a similar argument, the *Mossman* court performed an extensive analysis of sentencing schemes permitting lifetime postrelease supervision for sex crimes. See 294 Kan. at 917-19. And the court noted a number of cases in other jurisdictions concluding lifetime postrelease sentences imposed under these schemes did not constitute cruel and unusual punishment. 294 Kan. at 919-20. After this review, the court concluded:

"[I]t seems fair to say that less than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as Mossman's, and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." 294 Kan. at 920.

See also *Cameron*, 294 Kan. at 893-95 (applying *Mossman* analysis of third factor to lifetime postrelease supervision imposed for aggravated indecent solicitation of a child). The same analysis applies here, and Funk failed to make a more targeted argument by citing to penalties for the same crime.

### *Weighing All Three Factors*

On balance, Funk's crime was a serious one, and a sex offense against a minor has historically been treated as a violent felony without regard to whether physical force was used to commit it.

Funk's mitigating claims about the nature of his crime are not supported by evidence or factual findings. Moreover, Funk presented no evidence of mitigating facts about his character. Finally, the second and third *Freeman* factors do not indicate Funk's lifetime postrelease supervision sentence is grossly disproportionate to sentences for more serious Kansas offenses or for similar conduct outside our jurisdiction.

The seriousness of Funk's crime and the legitimate penological goals that the lifetime postrelease supervision period advance "outweigh the lack of strict proportionality with other sentences in Kansas and other jurisdictions, especially given that the sentence is not grossly disproportionate." *Mossman*, 294 Kan. at 921. Because of this, lifetime postrelease supervision is not so disproportionate a punishment to an 18- or 19-year-old man's participation in a sex act with a 14-year-old girl that the punishment is shocking to the conscience or offensive to fundamental notions of human dignity. See *Toahty-Harvey*, 297 Kan. 101, Syl. ¶ 3; *Freeman*, 223 Kan. at 367.

Therefore, Funk's lifetime postrelease supervision term does not constitute cruel or unusual punishment under Section 9 of the Kansas Constitution Bill of Rights. See *Mossman*, 294 Kan. at 921. Accordingly, we affirm the Court of Appeals' decision.

\* \* \*

JOHNSON, J., dissenting: I dissent, reiterating everything I said in *State v. Mossman*, 294 Kan. 901, 931-32, 281 P.3d 153 (2012) (Johnson, J., dissenting). If anything, the disproportionality of a lifetime postrelease supervision sentence for the crime with which Funk was actually convicted—*attempted* indecent solicitation of a child—is even more egregious and shocking than Mossman's lifetime postrelease supervision sentence for aggravated indecent liberties with a child. As the district court opined, "the facts of this case clearly reflect the injustice of life time post release supervision." This court has the authority—nay the duty—to protect Kansas citizens against injustice in the form of cruel and/or unusual punishments, and I would fulfill that duty in this case.

Before addressing the majority's assessment of the *Freeman* factors, I want to comment on its holding that Funk did not preserve a review of the Court of Appeals' ruling that the imposition of lifetime postrelease supervision was not cruel and unusual punishment under our federal Constitution. Funk's petition for review began with a Prayer for Review that recited that he was seeking relief from the panel's federal constitutional holding, to-wit:

"The Defendant prays this Court for an order reversing the decision of the Court of Appeals which affirmed the District Court's decision that the Defendant's potential postrelease sentence of lifetime imprisonment did not violate the Defendant's rights under the *Eight[h] and Fourteenth Amendments to the United States Constitution* and § 9 of the Kansas Constitution Bill of Rights which prohibits cruel and unusual punishment." (Emphasis added.)

The Court of Appeals apparently felt that it had enough briefing to rule on the federal constitutional claim because it decided that part of the question. Moreover, the State did not file a cross-petition claiming that the panel erred in ruling on the merits of the federal constitutional claim. Accordingly, notwithstanding the majority's disdain for the manner in which Funk's attorney presented his client's federal constitutional claim, I would review the Court of Appeals' decision on that point in order to make certain that a teenager is not subjected to a life sentence in violation of the United States Constitution. But I need not quibble further about the federal constitutional standard because not allowing this young defendant the opportunity to have even one more day of freedom from State regulation the rest of his life is cruel and/or unusual punishment under any standard imaginable.

Turning to the merits of the State claim, I start with a review of what we should be analyzing. "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate *to the crime for which it is inflicted* that it shocks the conscience and offends fundamental notions of human dignity." (Emphasis added.) *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). It appears the majority is analyzing whether lifetime postrelease supervision would be a cruel or unusual punishment for crimes other than that for which it was inflicted in this case. For instance, at one point, the majority declares that "[i]llegal

sexual intercourse with a minor is a serious offense." While that may be true, the State did not even allege that Funk had sexual intercourse with the victim in this case. He was originally charged with sodomy, but the crime of conviction was attempted indecent solicitation of a child. So, when the majority concludes that "lifetime postrelease supervision is not so disproportionate a punishment to an 18- or 19-year-old man's participation in a sex act with a 14-year-old girl," it is not deciding whether the punishment fits the crime of conviction in this case, *i.e.*, attempted solicitation of a child. Rather, it appears that the majority is assigning responsibility to Funk for all the crimes committed upon the victim that night. But, of course, if the State believed that Funk was criminally responsible for all those acts, it should have charged and convicted him of those additional offenses. But now, on the record before us, this defendant need only answer for the crime for which *he* was *convicted* in the district court, attempted indecent solicitation of a child.

As the majority described, the first *Freeman* factor makes the facts of the crime relevant to the inquiry into the nature of the offense and character of the offender. We have declared that the individualized "factual aspects" of the crime "are a necessary part of the overall analysis." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008). That declaration negates the notion, suggested by the Court of Appeals in this case, that the first factor always favors the State because the legislature has declared sex offenses with minors to be violent crimes as a matter of law. To the contrary, the whole point of the first factor is to individualize the disproportionality analysis.

But as the majority notes, our record is a bit shy on specific factual findings, especially with regard to the crime charged in the amended complaint—attempted indecent solicitation of a child. The crime of indecent solicitation was defined in K.S.A. 21-3510(a)(1) as follows:

"(a) Indecent solicitation of a child is:

(1) Enticing or soliciting a child 14 or more years of age but less than 16 years of age to commit or to submit to an unlawful sexual act."

Moreover, by statutory definition, an attempt involves a failure to perpetrate the applicable crime. K.S.A. 2010 Supp. 21-3301(a). Accordingly, by legal definition, Funk's crime of conviction did not involve him participating in any unlawful sexual act with the victim. Rather, he was convicted of trying, but failing, to entice or solicit the child victim to commit or submit to an unlawful sexual act. At the plea hearing, the judge requested an outline of the evidence supporting the crime of attempted indecent solicitation of a child and the prosecutor responded as follows:

"On the 6th day of November, in Cloud County, Kansas, Defendant was involved in an incident in which a 14-year-old girl was at the college apartments here in Cloud County.

"During the course of the evening, Defendant and several others got the girl drunk.

"There was an attempt by Defendant, though others did succeed, but there was an attempt by Defendant to lure her into a bedroom, at which time there was illicit sexual acts that took place, and that would be the evidence, your Honor."

The court found that there was a factual basis to accept the plea without elaborating further on the facts. But the court's sentencing decisions tell us a great deal. *Freeman* instructs us to examine the nature of the offense and character of the offender "with particular regard to the degree of danger present to society." 223 Kan. at 367. We have a strong indication of the district judge's assessment of Funk's degree of danger to society—she granted him probation and immediately sent him right back into that society. Moreover, that disposition was totally discretionary because under K.S.A. 2010 Supp. 21-4603d(f)(1), the sentencing judge was permitted to impose a prison sentence, even if the presumptive sentence was nonprison, if the current crime was committed while the defendant was on felony probation.

The majority emphasizes the State's argument that Funk was on probation for burglary at the time of the current offense and that this conviction violated Funk's probation. But that circumstance was not a secret at sentencing, where the same argument by the State was unavailing. The sentencing judge recited that "we've been down this road before not so long ago in Jewell County [the venue of the prior felony]"; that "[t]he County Attorney requested

that you go to prison for violating the conditions of your probation in the Jewell County case"; but that "the Court grants you the probation, but you must follow these rules." We can presume that in granting discretionary probation, the sentencing judge found that the degree of danger present to society was minimal. *Cf. O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012) (where no objection made, this court presumes district court found all facts necessary to support its judgment).

Although not discussed by the parties, one might question whether the imposition of lifetime postrelease supervision is even a legal sentence when the defendant is placed on probation. See K.S.A. 22-3504(1) (court may correct illegal sentence at any time). K.S.A. 2010 Supp. 22-3717(d)(1)(G) actually says that "persons convicted of a sexually violent crime committed on or after July 1, 2006, *and who are released from prison*, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." (Emphasis added.) A person placed on probation is potentially never going to be released from prison, albeit *Mossman* held that a cruel or unusual challenge to lifetime postrelease supervision was ripe on direct appeal from sentencing, even though we would not know whether defendant would ever be released on such supervision. 294 Kan. 901, Syl. ¶ 3. Also, here the record suggests that Funk's probation was revoked, so that he would be released from prison after having served the underlying 10-month prison sentence. But the point is that even the legislature did not contemplate that lifetime postrelease supervision was appropriate for a person who was not even imprisoned.

I also take issue with the majority's discussion of the second *Freeman* factor, *i.e.*, "[a] comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect." 223 Kan. at 367. The majority rejects Funk's proffer of 22 offenses in this jurisdiction that are classified as severity level 1 to 4—arguably more serious crimes than the severity level 8 offense here—and that carry only a 36-month postrelease super-

vision term, rather than a lifetime term. The majority's rejection is based on the fact that, although the more serious crimes have a much shorter and finite postrelease supervision term, they carry a longer period of imprisonment before the postrelease supervision commences. In other words, the majority's test for the seriousness of a punishment looks solely to the term of imprisonment. I find that premise to be faulty.

In *Mossman* we clarified that "lifetime postrelease supervision is undeniably part of a defendant's sentence"; that a person on postrelease supervision suffers restrictions on his or her freedom; and that a person on postrelease supervision is "still . . . under a sentence." 294 Kan. at 907-08. Accordingly, the imposition of lifetime postrelease supervision means the defendant has received a life sentence, regardless of the portion of the sentence that is actually served in prison, unless the majority intends to overrule our precedent. Ordinarily, then, a life sentence is a greater punishment than a finite prison term, followed by a finite postrelease supervision term.

Likewise, the majority's new modification to the second *Freeman* factor, whereby the sex crime of conviction is only compared against more serious sex offenses, makes no sense. All of the sex offenses carry the lifetime postrelease supervision, so that the majority's new methodology compares one life sentence against another life sentence. That comparison actually makes Funk's punishment suspect under *Freeman* because his punishment for a sex crime of attempted indecent solicitation of a child is the same as if he forcefully and brutally raped the victim, a more serious offense in the majority's view.

With respect to the third *Freeman* factor—a comparison to other jurisdictions—this State's cruelty must surely reign supreme. At least, I hope that there is not another state out there that would impose a lifetime sentence on a teenaged college freshman who tries, but fails, to solicit sex from a high school freshman, while imposing a lesser sentence on another defendant for killing the victim in the heat of passion. That disproportionality certainly shocks my conscience and offends my fundamental notion of hu-

man dignity. I would find the lifetime postrelease supervision sentence in this case to be unconstitutionally cruel or unusual.

LUCKERT, J., joins the foregoing dissenting opinion.