NOT DESIGNATED FOR PUBLICATION

No. 113,051

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS NALL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed November 25, 2015. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., ATCHESON, J., and WALKER, S.J.

*Per Curiam*:  Travis Nall appeals the district court's decision finding that a lifetime postrelease sentence was constitutional as applied to him. After reviewing the record on appeal, we agree with the district court and affirm.

FACTS

In February 2011, Nall, who was 21 years old, was charged with one count of indecent liberties with a child, one count of criminal sodomy, one count of aggravated burglary, one count of aggravated assault, and two counts of battery. The sex offenses

arose out of Nall's relationship with 14-year-old C.B. The other charges were filed after Nall forced himself inside the girl's home, threatening the people inside by using a knife and choking the girl.

Nall and the State reached an agreement which allowed him to plead guilty to one count of indecent liberties, one count of aggravated burglary, and one count of aggravated assault. In exchange for his plea, the State agreed to dismiss the remaining counts. The district court accepted Nall's plea. After denying a motion to depart, the district court sentenced Nall to serve 52 months' imprisonment with 24 months' postrelease supervision.

In July 2014, nearly 3 years after Nall was sentenced, the Kansas Department of Corrections advised the district court that Nall's sentence was illegal because he should have received a term of lifetime postrelease supervision. A journal entry nunc pro tunc was prepared. Nall promptly objected, arguing that a lifetime postrelease sentence was unconstitutional as applied to the facts of his case.

The district court heard arguments from counsel regarding the appropriateness of lifetime postrelease for Nall. After considering those arguments and conducting the analysis required by *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), the district court concluded that given the facts of this case, the lifetime postrelease sentence was constitutionally permissible. The journal entry nunc pro tunc was filed to reflect the lifetime postrelease sentence. Nall timely appeals the district court's decision to this court.

ANALYSIS

On appeal, Nall contends that the sentence imposed by the district court is effectively a life sentence. He takes issue with all of the district court's *Freeman* analysis.

2

*Standard of review*

Nall's lifetime postrelease sentence resulted from the application of sentencing statutes. Resolution of this appeal requires a constitutional analysis of these statutes. Determining a statute's constitutionality is a question of law subject to unlimited review. The appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the legislature's apparent intent. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014).

*The* Freeman *factors*

In *Freeman*, the Kansas Supreme Court established guidelines that are to be used when evaluating whether the length of a sentence "offends the constitutional prohibition against cruel punishment." 223 Kan. at 367. The factors that must be examined are:

1. The "nature of the offense and the character of the offender" must be examined, with "particular regard to the degree of danger present to society." Relevant inquiries include the facts of the crime, whether the crime was violent, the extent of the defendant's culpability for the victim's injuries, and the penological purposes for the punishment;

2. The comparative length of the punishment for the crime of conviction versus punishments imposed in this jurisdiction for "more serious offenses." To the extent that a more serious crime is punished less severely, the sentence in question is "suspect"; and

3. The comparative length of punishments in other jurisdictions for the identical offense. 223 Kan. at 367.

*The nature of the offense*

Nall stresses that the inquiry surrounding the first *Freeman* factor must be individualized for both the offense and the offender. In particular, Nall rejects the idea that any sex crime involving a minor automatically warrants lifetime postrelease.

Analysis under the first *Freeman* factor requires the court to consider the nature of the offense and the character of the offender, with particular regard to the degree of danger presented to society. Factors that should be considered include whether the offense is violent, the extent of the offender's culpability for the resulting injury, and the penological purposes of the punishment. *State v. Ross*, 295 Kan. 424, 426, 284 P.3d 309 (2012).

In this case, it is undisputed that Nall and C.B. were involved in a sexual relationship over a period of months. Nall knew that C.B. was under age 16. That relationship came to light after an incident where Nall forced his way inside C.B.'s home and threatened both her and another person with a knife. Nall choked C.B. with his hands until he was physically restrained by another individual. Nall claimed that he was under the influence of alcohol at the time of the event and believed that the alcohol was a "contributing factor to the criminal activity."

Nall underwent a psychosexual evaluation prior to the imposition of the lifetime postrelease sentence. On one test, the STATIC-99, Nall's score placed him in the "Moderate High" risk category; however, the practitioner who administered the test thought this score was inflated and that Nall more likely belonged in the "Moderate Low" range. When asked about his relationship with C.B., Nall said that his conviction was "'kind of surprising'" because he was not aware that there was an actual legal age of consent. When asked whether he thought he needed sex offender treatment, Nall

4

answered, "'I don't know.'" The social worker who evaluated Nall believed that Nall's behavior was the result of "poor decision-making."

To the extent that they are known, the facts in this case closely mirror those found in *State v. Mossman*, 294 Kan. 901, 281 P.3d 153 (2012). In that case, the 25-year-old defendant was living with the family of the 15-year-old victim; during his stay with the family, the defendant and the victim began a sexual relationship. That sexual relationship continued for a period of time before the victim disclosed its existence in an interview. The defendant was found by the district court to act impulsively. In addition, Mossman was scored to have a low risk of recidivism.

When analyzing the first *Freeman* factor in *Mossman*, the Kansas Supreme Court noted that sex offenses against minors are "'considered particularly heinous crimes.'" 294 Kan. at 909. For that reason, even though Mossman's relationship with his victim was not violent, the Kansas Supreme Court rejected Mossman's argument that a lifetime postrelease sentence was a disproportionate punishment for the crime committed. In so deciding, the court noted that while the 15-year-old victim "may have believed she was mature enough to be a willing participant in the sexual acts" and was perhaps less vulnerable than a younger child, Kansas law recognizes that 15 year olds are children and are "deserving of the State's protection." 294 Kan. at 910.

A close examination of another of our Supreme Court's decision in a similar case, *State v. Funk,* 301 Kan. 925, 349 P.3d 1230 (2015), sheds further light on how to apply the first *Freeman* factor.

In *Funk,* the defendant was convicted of attempted indecent solicitation of a child, a severity level 8 person felony. The district court accepted arguments that the 14-year-old female victim actually instigated the crime without request or force, and that she suffered no injury. The court also noted that the defendant was a passive participant in the

5

sexual activity and had no prior sex offenses. The defendant was granted probation in the case. After hearing arguments, the district court ordered lifetime postrelease supervision because it concluded it was required to do so, but railed against the injustice of its application in the case.

Our Supreme Court affirmed both the district court and Court of Appeals decisions which had ordered Funk to be subject to lifetime postrelease supervision. It held that these facts did not tip the first *Freeman* factor in favor of Funk. Citing *Mossman* and similar cases, our high court noted that "[i]llegal sexual intercourse with a minor is a serious offense, and the victims of those crimes are legally considered incapable of consenting to such acts. [Citation omitted.] And to the extent Funk argues [the victim] was not harmed, we have also rejected similar arguments based on a supposed lack of physical harm to the victim." 301 Kan. at 939-40.

Nall is correct when he asserts in his appellate brief that some of the reasons cited by the district court when making its decision are not supported by evidence in the record. However, we think the facts which clearly are in the record support the district court's ultimate conclusion, and thus any additional findings beyond those were harmless error by the district court. The conclusions of our Supreme Court in finding the first *Freeman* factor present under the facts of the *Mossman* and *Funk* decisions cause us to conclude that factor is also justified under the facts of Nall's crime.

In *Ross*, the Kansas Supreme Court noted that postrelease supervision is a "less onerous" sentence than a life term of incarceration. 295 Kan. at 427. That is perhaps especially true in this case, where Nall has already served his complete prison sentence and has been released into the community. The court also noted in *Ross* that lifetime postrelease was appropriate where the defendant had "little understanding of the gravity of the crime at issue on appeal." 295 Kan. at 427. Nall did not only appear to not

understand the gravity of his crime, he was apparently confused that his behavior was even criminal.

Despite the fact that there is no evidence that C.B. was anything but a willing sexual partner to Nall, the Kansas Legislature has determined that all crimes that involve sexual relations with a minor child are, by their nature, violent. See *Mossman*, 294 Kan. at 910. Because of the "'particularly heinous'" nature of sex crimes which involve children, there is a "penological interest in punishing" those who commit such crimes. *Mossman*, 294 Kan. at 909. Our analysis here weighs in favor of a lifetime postrelease sentence.

*The comparative length of the punishment to other offenses*

Nall notes in his appellate brief that there are several offenses in Kansas that have a higher severity level but a shorter total sentence because the term of postrelease supervision is shorter. Nall urges this court to consider not just the term of incarceration but the total length of the punishment when considering whether his sentence is disproportionately lengthy.

The Kansas Supreme Court recently noted that the proportionality of a sentence cannot be judged by comparing the lifetime postrelease period to that imposed for other crimes. *Funk,* 301 Kan. at 941. The ruling in *Funk* continues the analysis from *Mossman*, where the Kansas Supreme Court held that a lifetime postrelease sentence is "not grossly disproportionate" to other offenses, specifically second-degree murder, in light of the penological purposes of the punishment, the nature of the crime, and the other issues that are addressed by consideration of the first *Freeman* factor. *Mossman*, 294 Kan. at 917. This analysis is especially applicable in this case, where Nall has already served his entire period of confinement and is in the community and on probation.

The Kansas Supreme Court has routinely rejected this proportionality argument. This court is duty bound to follow Kansas Supreme Court precedent, absent some indication that the court is departing from a previous position. *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). Given the Supreme Court's recent affirmance of this analysis in *Funk*, we must reject Nall's argument concerning proportionality.

*Comparison of the penalty to punishments in other jurisdictions*

Nall claims in his appellate brief that there is a "national consensus against mandatory imposition" of a lifetime postrelease sentence. Nall believes that only five states impose such a punishment for the crime of indecent liberties. Since his sentence is so lengthy as to be "out-of-step with national norms," Nall contends that his lifetime postrelease sentence should be reversed.

Once again, our decision is controlled by the Kansas Supreme Court's decision in *Mossman*. In that case, the court decided that even if Kansas' lifetime postrelease sentence is "more severe than most other jurisdictions," it is not cruel or unusual. 294 Kan. at 920. This is true, the court determined, because "legitimate penological goals" of "retribution, deterrence, incapacitation, and rehabilitation" are furthered by lifetime postrelease supervision. 294 Kan. at 920-21. This decision was recently reaffirmed by the court in *Funk*. See 301 Kan. at 942-43. We must follow the Kansas Supreme Court's prior rulings on this issue. See *Ottinger*, 46 Kan. App. 2d at 655.

Analysis of all three *Freeman* factors compels us to conclude that the lifetime postrelease sentence that was imposed by the district court passes muster under the Kansas and United States Constitutions. This is especially true for any application of the second and third *Freeman* factors, where the outcome is predetermined by application of Kansas Supreme Court precedent.

8

*Eighth Amendment analysis*

Finally, we must determine whether Nall's sentence is appropriate under the Eighth Amendment to the United States Constitution. Nall preserved this issue by referencing the Eighth Amendment in his motion attacking his lifetime postrelease sentence.

Nall acknowledges that the proportionality analysis is quite similar to the one required by *Freeman*. He maintains that his sentence was disproportionate to the actual crime charged.

Although they are quite similar, the analytical framework for an Eighth Amendment challenge is built around the United States Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). See *Mossman*, 294 Kan. at 921. Nall mentions *Graham* in his appellate brief but does not conduct the case-specific proportionality analysis that *Graham* compels. Because of this, we would normally determine that Nall's failure to make this specific argument constitutes abandonment of the issue. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

The *Graham* analysis was applied by the *Mossman* court, when it found that a review of relevant caselaw indicates that the United States Supreme Court has allowed "considerable latitude to a legislature's policy decision regarding the severity of a sentence." *Mossman*, 294 Kan. at 923. In addition, even under the Eighth Amendment, the "penological objectives for lifetime postrelease supervision," particularly "deterrence, incapacitation, and rehabilitation," apply even to a first-time offender. 294 Kan. at 930.

After reviewing all of Nall's arguments, we are convinced that the lifetime postrelease period in this case passes constitutional scrutiny, both under the Kansas Constitution and the Eighth Amendment to the United States Constitution.

Affirmed.

* * *

ATCHESON, J., concurring:  I concur in the narrow holding finding the imposition of lifetime postrelease supervision on Defendant Travis Nall to be permissible punishment under both the Kansas Constitution and the United States Constitution.