NOT DESIGNATED FOR PUBLICATION

No. 114,736

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA M. HORN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed September 2, 2016. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*: Joshua M. Horn appeals his sentence following his conviction of one count of attempted aggravated criminal sodomy. In his only issue on appeal, Horn argues that lifetime postrelease supervision constitutes cruel and unusual punishment as applied to his case. For the reasons stated herein, we affirm the district court's judgment.

Horn's case presents a lengthy procedural history. On April 4, 2007, the State charged Horn with one count of aggravated criminal sodomy, one count of aggravated indecent liberties with a child, and one count of attempted rape. On January 14, 2008, pursuant to plea negotiations, Horn pled guilty to an amended charge of attempted

1

aggravated criminal sodomy, and the State dismissed the remaining charges. As part of the factual basis for the plea, Horn admitted in court that he caused his 12-year-old daughter to have oral contact with his genitalia. Horn was released on bond at the time of the plea hearing.

On February 22, 2008, the State filed a motion to revoke Horn's bond. The motion alleged that Horn had violated the conditions of his bond by having contact with his daughter and engaging in oral sex with her. The district court revoked Horn's original bond and placed him into custody with a new bond in the amount of $500,000.

The district court held a sentencing hearing on February 29, 2008. Horn's criminal history was "I." Horn made a motion for a durational and a dispositional departure. In support of his motion, Horn called Bruce Nystrom to testify. Nystrom was a licensed psychologist and had conducted a psychological evaluation of Horn. Nystrom believed Horn was a good candidate for outpatient treatment and his risk of reoffending was low. However, Nystrom testified that if the allegations in the motion to revoke bond were true, this fact would significantly diminish Horn's prognosis for successful treatment.

The State requested that the district court deny Horn's departure motions because there was not a substantial and compelling reason to shorten his term of imprisonment or to grant him probation. The district court denied Horn's departure motions and sentenced him to life in prison with a mandatory minimum prison term of 25 years (Hard 25). The district court also ordered that Horn serve 36 months' postrelease supervision.

Horn appealed his sentence. On May 8, 2009, our Supreme Court vacated Horn's sentence and remanded the case to the district court to resentence Horn for a severity level 1 nondrug felony rather than an off-grid felony. See *State v. Horn*, 288 Kan. 690, 693-94, 206 P.3d 526 (2009).

2

The district court resentenced Horn on July 2, 2009. Horn renewed his motions for a dispositional and/or durational departure. The State argued that there was no substantial or compelling circumstance to justify a departure from the applicable sentencing gridbox. The district court denied Horn's departure motions and sentenced him to 165 months' imprisonment with 36 months' postrelease supervision. Horn did not appeal this sentence.

On July 3, 2015, the State filed a motion to correct illegal sentence arguing that Horn should have been sentenced to lifetime postrelease supervision instead of 36 months. The district court held a hearing on the motion on July 6, 2015. At the hearing, Horn argued:  (1) lifetime postrelease supervision was unconstitutional as applied to him because he did not have any prior convictions, (2) Nystrom had testified that he had a low risk of recidivism, and (3) other crimes that had the same severity level or were more serious did not include lifetime postrelease supervision. In arguing that the facts of the case justified lifetime postrelease supervision, the State referred to the affidavit supporting Horn's bond revocation on February 22, 2008, including a claim that Horn had violated the conditions of his bond by engaging in oral sex with his daughter.

After hearing arguments of counsel, the district court ruled that lifetime postrelease supervision was not unconstitutional as applied to Horn. In making its ruling, the district court indicated that it had considered the original facts of the case as well as the affidavit supporting the bond revocation, which had been presented at the hearing without objection. The district court applied the factors set forth in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), and found that: (1)  the egregious facts of the case did not support finding lifetime postrelease supervision unconstitutional; (2) Horn presented a high risk to reoffend because of the violation of his bond conditions prior to sentencing and required that he be watched closely for the remainder of his life; (3) the difference between the length of postrelease supervision for more serious crimes and lifetime postrelease supervision for Horn was not grossly disproportionate and did not outweigh the facts of the case and Horn's likelihood to reoffend; and (4) any difference between

3

lifetime postrelease supervision in Horn's case and the punishment for the same offense in other jurisdictions did not make lifetime postrelease supervision cruel and unusual punishment. The district court concluded that imposing lifetime postrelease supervision was not so disproportionate to Horn's crime that it shocked the conscience or offended fundamental notions of human dignity. Horn timely appealed his sentence.

ANALYSIS

The only claim that Horn raises on appeal is that lifetime postrelease supervision, as applied to his case, constitutes cruel and unusual punishment. Horn argues that lifetime postrelease supervision is cruel and unusual punishment because: (1) he presents a low risk of danger to society and his character is inconsistent with the level of punishment imposed; (2) the facts of his case do not warrant lifetime postrelease supervision; (3) persons convicted of more severe offenses in Kansas only receive 36 months of postrelease supervision; and (4) mandatory lifetime postrelease supervision without the possibility of release for persons convicted of sex crimes is more severe than other states' postrelease supervision sentences for persons convicted of sex crimes. Horn brings his constitutional claim primarily under § 9 of the Kansas Constitution Bill of Rights, but he also makes reference to the Eighth Amendment to the United States Constitution.

The State argues that the imposition of lifetime postrelease supervision in this case does not constitute cruel and unusual punishment. Specifically, the State argues that lifetime postrelease supervision was not cruel and unusual punishment in this case because: (1) the facts of Horn's sexual abuse of his daughter were "extremely aggravated"; (2) Horn has a high risk to reoffend based on his sexual abuse of his daughter while he was released on bond; (3) any difference between lifetime postrelease supervision and the length of postrelease supervision for more serious offenses is not grossly disproportionate and does not outweigh the facts of this case; and (4) our Supreme Court previously has ruled that other states' punishment for sex offenses is not

4

so disproportionate to Kansas' mandatory imposition of lifetime postrelease supervision that it shocks the conscience or offends fundamental notions of human dignity.

Under Kansas law, a court is mandated to impose lifetime postrelease supervision for a conviction of a "sexually violent crime," which includes attempted aggravated criminal sodomy. See K.S.A. 2015 Supp. 22-3717(d)(1)(G), (d)(5)(E), (d)(5)(M). The court's failure to comply with the lifetime postrelease statute results in an illegal sentence. See *State v. Barber*, 44 Kan. App. 2d 748, 753-54, 240 P.3d 980 (2010), *rev. denied* 296 Kan. 1131 (2013). An illegal sentence can be corrected at any time. K.S.A. 22-3504(1). Here, the court was required to correct Horn's sentence from 36 months' postrelease supervision to lifetime postrelease supervision, barring a successful claim by Horn that such a sentence constituted cruel or unusual punishment in his particular case. See *State v. Ballard*, 289 Kan. 1000, 1010-12, 218 P.3d 432 (2009) (defendant's postrelease supervision of 36 months for conviction of sexually violent crime was illegal and court was able to correct sentence at any time by imposing lifetime postrelease supervision).

Section 9 of the Kansas Constitution Bill of Rights states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." In *Freeman*, our Supreme Court interpreted § 9 of the Kansas Constitution Bill of Rights to prohibit punishment "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. [Citations omitted.]" 223 Kan. at 367. The *Freeman* court established three factors to weigh when assessing proportionality challenges under § 9:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

5

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

No one factor controls. *State v. Mossman*, 294 Kan. 901, 908, 281 P.3d 153 (2012). While one consideration "'may weigh so heavily that it directs the final conclusion,'" each part of the test should be given consideration. 294 Kan. at 908 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 [2008]). A challenge to the proportionality of a sentence is necessarily a factual inquiry. 294 Kan. at 908-09 (quoting *Ortega-Cadelan*, 287 Kan. at 161).

Determining whether a sentence constitutes cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights requires a court to make legal and factual determinations. *State v. Funk*, 301 Kan. 925, 933, 349 P.3d 1230 (2015). When a case-specific cruel and unusual punishment decision is appealed, this court reviews the district court's factual findings for substantial competent evidence. 301 Kan. at 933. The district court's legal conclusions are reviewed de novo. 301 Kan. at 933.

*The first* Freeman *factor*

The first *Freeman* factor requires this court to evaluate the nature of Horn's offense and his character. *Freeman*, 223 Kan. at 367. Specifically, this court must consider the degree of danger presented to society by Horn. 223 Kan. at 367. This requires the court to evaluate the facts of Horn's crime, whether his crime was violent or nonviolent, his culpability for any injuries that occurred through his crime, and the penological purposes of his prescribed punishment. 223 Kan. at 367.

6

In addressing the first *Freeman* factor, the district court made the following findings:

"Regarding the first factor, which is the nature of the offense and the character of the offender, the Court notes that the crime of conviction in this case was attempted aggravated criminal sodomy. The Court further finds that this was a crime perpetrated by the defendant on his own daughter. The Court finds that this is a sexually violent crime by definition and contained and involved different sex acts perpetrated by the defendant on his daughter; that this is a very serious crime and while the Court notes that the ultimate crime of conviction was for mere attempt as if the crime weren't completed, that the facts of this case would clearly indicate that the actual sexual acts were completed. They weren't just mere attempts but actually involved sexual crime perpetration by Mr. Horn on his own daughter. The court notes that his daughter, according to the charging document in this case, was born on May 19 of 1994. That the State's charging document indicated that the crimes were perpetrated, as least as far as the charges in this case, between September 1 of 2006, and December 31 of the year 2006; therefore, his daughter would have been 12 years old at the time. And it almost goes without saying that these are extremely aggravated facts given the entire factual history of the case. It would be difficult to imagine that this child didn't endure a great deal of mental and emotional harm in connection with the obviously confused relationship between her father and herself. In other words, to paraphrase what Ms. Pierce suggested to the Court, the man who had the greatest responsibility to protect his child is the one that did the most harm to her. And certainly the egregious facts of this case certainly do not support a finding of unconstitutionality in this case."

The district court acknowledged that Nystrom's report indicated that Horn was a good candidate for outpatient treatment and his risk was reoffending was low. However, the district court also pointed out that Nystrom testified that if the allegations in the motion to revoke bond were true, this fact would significantly diminish Horn's prognosis for successful treatment. The district court concluded by finding that Horn's "individual characteristics place him into a category of offender who present a special problem and

concern for society and, therefore, he must be watched closely during any period of the remainder of his life in which supervision is authorized."

Horn argues that the nature of his offense and his character support a finding that lifetime postrelease supervision is cruel and unusual punishment. To support his argument, Horn points to *State v. Proctor*, No. 104,697, 2013 WL 6726286 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1273 (2014), wherein this court struck down lifetime postrelease supervision for a defendant convicted of sexually violent crimes because it constituted cruel and unusual punishment as applied. 2013 WL 6726286, at *8. In *Proctor*, the defendant, who was 19 years old and had no criminal history, was placed on probation for his convictions but received lifetime postrelease supervision. On appeal, this court reasoned that the district court's decision to place the defendant on probation was not compatible with also placing him on lifetime postrelease supervision. 2013 WL 6726286, at *4. This court found that the defendant would benefit from therapy, counseling, and sex offender treatment more than incarceration because he was young, did not have a criminal history or history of sexual abuse, and had been sexually abused as an adolescent but had not received any treatment. 2013 WL 6726286, at *4. For these reasons, this court found that the first *Freeman* factor weighed against the imposition of lifetime postrelease supervision. 2013 WL 6726286, at *6.

Horn's case is similar to *Proctor* in that Horn had no criminal history before his current conviction of attempted aggravated criminal sodomy. However, this is where the similarities end. Horn's case is distinguishable because Horn was 32 years old when the offense was committed and there is no indication that he had been sexually abused as a child. More importantly, Horn's case is distinguishable because he received a 165-month prison sentence rather than probation as the defendant received in *Proctor*.

Horn's case is more similar to *Mossman* where the defendant, who was 25 years old, was convicted of aggravated indecent liberties with a 15-year-old victim. The

8

defendant argued that his character did not support lifetime postrelease supervision because his assessment concluded that he had a low risk of recidivism, he had no criminal history, he had accepted responsibility for his crime, and he had shown an appropriate level of remorse for his crime. However, our Supreme Court rejected this argument because it ignored the penological purpose of postrelease supervision, which is to deter and rehabilitate sex offenders. 294 Kan. at 911. The court found that lifetime postrelease supervision served a deterrent purpose for the defendant because, even though he received a low recidivism score, his assessment also concluded that he had a lack of impulse control and a rebellious character. 294 Kan. at 911.

Here, as the district court found, Horn committed a sexually violent crime with his 12-year-old daughter. Although he pled guilty pursuant to plea negotiations to an amended charge of attempted aggravated criminal sodomy, Horn admitted in court that he caused his 12-year-old daughter to have oral sex with him. As the district court found, "[i]t would be difficult to imagine that this child didn't endure a great deal of mental and emotional harm in connection with [the crime]. In other words . . . the man who had the greatest responsibility to protect this child is the one that did the most harm to her."

Moreover, the record reflects that after Horn pled guilty in this case, his bond was revoked based on an allegation that he contacted his daughter and engaged in oral sex with her. We do not place significant weight on this allegation because it was never proven in court. However, at sentencing, a district court can consider any relevant evidence of a defendant's behavior, conduct, life, or characteristics. See *Proctor*, 2013 WL 6726286, at *3 (quoting *Pepper v. United States*, 562 U.S. 476, 488-89, 131 S. Ct. 1229, 179 L. Ed. 2d 196 [2011]). The affidavit supporting the bond revocation, which was presented to the district court without objection, was relevant evidence and could be considered by the district court when sentencing Horn.

9

Nystrom's report in support of Horn's departure motion indicated that he was a good candidate for outpatient treatment and his risk of reoffending was low. However, Nystrom testified that if the allegations in the motion to revoke bond were true, this fact would significantly diminish Horn's prognosis for successful treatment. Once again, we note that the allegation in the motion to revoke bond was never proven in court. But even without considering the affidavit supporting the bond revocation, we find there is nothing about the nature of the offense or the character of the offender that substantially supports Horn's claim that lifetime postrelease supervision is unconstitutional punishment.

Also, as emphasized by the court in *Mossman*, lifetime postrelease supervision serves multiple penological purposes, including retribution, deterrence, incapacitation, and rehabilitation. 294 Kan. at 912. These considerations are relevant herein. Lifetime postrelease supervision will help to ensure that Horn does not reoffend when he is released from prison by requiring that he maintain contact with his supervising officer. Lifetime postrelease supervision supports rehabilitation by providing Horn the opportunity to transfer from incarceration and reenter society as long as he is monitored and complies with other conditions. Finally, lifetime postrelease supervision serves as punishment and retribution for Horn's conduct in sexually assaulting his daughter.

There was substantial competent evidence to support the district court's findings under the first *Freeman* factor. Based on the serious nature of Horn's offense, the devastating emotional and psychological injuries he inflicted on his daughter, Horn's character, including the possibility that he may reoffend, and the penological purposes served by postrelease supervision, the first *Freeman* factor weighs in favor of imposition of lifetime postrelease supervision in Horn's case.

*The second* Freeman *factor*

The second *Freeman* factor requires this court to compare Horn's punishment with the punishment imposed in this state for more serious crimes. *Freeman*, 223 Kan. at 367. Horn argues that this factor weighs in his favor because sentences for intentional second-degree murder, reckless second-degree murder, aggravated kidnapping, aggravated trafficking, terrorism and illegal use of weapons of mass destruction, and human trafficking for forced labor do not include lifetime postrelease supervision. Thus, according to Horn, a defendant convicted of any of these "more serious" offenses would eventually complete his or her sentence, but Horn will never receive a release from supervision.

Horn's contention that these crimes are more serious than attempted aggravated criminal sodomy is incorrect. Horn's conviction of attempted aggravated criminal sodomy is a severity level 1 offense. K.S.A. 2006 Supp. 21-3506(c). Most of the offenses Horn listed as "more serious" offenses are also severity level 1 offenses. See K.S.A. 2006 Supp. 21-3402 (intentional second-degree murder is a severity level 1 offense); K.S.A. 2006 Supp. 21-3421 (aggravated kidnapping is a severity level 1 offense). Thus, in the eyes of the Kansas Legislature, attempted aggravated criminal sodomy is just as severe of a crime as aggravated kidnapping and intentional second-degree murder.

Horn asserts that under the guidelines of lifetime postrelease supervision, future felony or misdemeanor convictions could result in him serving the remainder of his life in prison. However, our Supreme Court has previously rejected attempts to focus on the potential consequences of violating lifetime postrelease supervision, finding that such consequences are a separate issue from the question of disproportionality. See *Mossman*, 294 Kan. at 914-17.

11

Moreover, our Supreme Court has rejected attempts under the second *Freeman* factor to focus on the length of postrelease supervision and instead has looked to the total length of the sentence, including actual incarceration. *Mossman*, 294 Kan. at 912-13; *State v. Cameron*, 294 Kan. 884, 893, 281 P.3d 143 (2012). In *Cameron*, our Supreme Court explicitly compared a sentence for a sexually violent crime, including lifetime postrelease supervision, to the sentence for second-degree murder, including the 36-month postrelease supervision term, and stated:

"[W]hile a defendant subject to lifetime postrelease supervision is under a longer cumulative sentence than a defendant sentenced for second-degree murder, a 'sentence to lifetime postrelease supervision [for a sexually violent offense] is not grossly disproportionate in relation to the sentence applicable to second-degree murder in Kansas when we consider the penological purposes, the seriousness of the crime, and the other concerns discussed in relation to the first *Freeman* factor.' [Citation omitted.]" 294 Kan. at 893.

Based on our Supreme Court's analysis in *Mossman* and *Cameron*, we conclude that the imposition of lifetime postrelease supervision for the crime of attempted aggravated criminal sodomy, a crime statutorily categorized as a sexually violent offense, is not grossly disproportionate to the sentence imposed for other, "more serious" offenses in Kansas. The second *Freeman* factor does not weigh in Horn's favor. As the district court found, "the difference in proportionality between Horn's sentence and one for second degree murder or other serious violent crimes is not so significant that it outweighs the concerns expressed in the Court's analysis of the first *Freeman* factor."

*The Third* Freeman *Factor*

The third *Freeman* factor requires this court to compare Horn's punishment with the punishment that other states impose for the same offense. *Freeman*, 223 Kan. at 367. Horn argues that this factor weighs in favor of finding his sentence unconstitutional

12

because Kansas' mandatory imposition of lifetime postrelease supervision for conviction of a sex offense "is the harshest and most severe in the country."

Our Supreme Court addressed a similar argument in *Mossman*, finding:

"[L]ess than half of states provide for lifetime postrelease supervision of some or all sex offenders and, because several states have a mechanism for termination of the postrelease supervision under certain conditions, only a handful of states impose punishment as absolute as Kansas' requirement. Nevertheless, Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as [aggravated indecent liberties with a child], and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." *Mossman*, 294 Kan. at 920.

Our Supreme Court followed the same rationale in *Cameron*. 294 Kan. at 894-95. The court has since reaffirmed its analysis on this factor, declining to further address it where the appellant did not offer new arguments to invite reconsideration. See *Funk*, 301 Kan. at 942. The third *Freeman* factor does not weigh in Horn's favor to any degree that it outweighs the concerns expressed in the court's analysis of the first *Freeman* factor.

In summary, after considering each of the *Freeman* factors, the district court's imposition of lifetime postrelease supervision was not so disproportionate to Horn's conviction "that it shocks the conscience and offends fundamental notions of human dignity." See *Freeman*, 223 Kan. at 367. Thus, Horn's sentence of lifetime postrelease supervision does not constitute cruel or unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights.

*Eighth Amendment Claim*

Horn's brief also makes reference to a sentencing challenge under the Eighth Amendment to the United States Constitution. However, Horn provides no separate analysis for his Eighth Amendment challenge other than analyzing the three *Freeman* factors. Generally, a point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013). In any event, we will briefly address whether Horn is entitled to relief under the Eighth Amendment.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The United States Supreme Court has found that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

In *State v. Gomez*, 290 Kan. 858, Syl. ¶ 5, 235 P.3d 1203 (2010), our Supreme Court looked to the United States Supreme Court's decision in *Graham* in laying the framework for analyzing Eighth Amendment cruel and unusual punishment and stated:

> "In conducting an Eighth Amendment analysis to determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must begin by comparing the gravity of the offense and the severity of the sentence. This analysis can consider a particular offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history, and a particular offender's propensity for violence. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in

14

other jurisdictions. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual."

The district court's factual findings under the first *Freeman* factor are relevant to any claim that Horn may be making under the Eighth Amendment. For the reasons we have previously stated, the first *Freeman* factor weighs in favor of imposition of lifetime postrelease supervision in Horn's case. As to the Eighth Amendment claim, comparing the gravity of Horn's offense with the severity of the sentence does not result in an inference of gross disproportionality. Because Horn fails to satisfy the threshold test for determining whether a sentence is cruel and unusual punishment, further consideration of his case-specific Eighth Amendment claim is unnecessary. Accordingly, we conclude that Horn's sentence of lifetime postrelease supervision does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

Affirmed.