NOT DESIGNATED FOR PUBLICATION

No. 114,794

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES B. MALMSTROM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed October 7, 2016. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., GREEN and BUSER, JJ.

*Per Curiam*:  James B. Malmstrom appeals the trial court's imposition of lifetime postrelease supervision following his conviction of two counts of attempted aggravated indecent liberties with a child.  On appeal, Malmstrom argues that the trial court's imposition of lifetime postrelease supervision constitutes cruel and unusual punishment under both § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. Nevertheless, none of Malmstrom's arguments on appeal are persuasive. Accordingly, we affirm the trial court's imposition of lifetime postrelease supervision.

1

In the spring of 2008, Malmstrom was arrested and charged with two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A), which involves "lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or satisfy the sexual desires of either the child or the offender, or both." The State contended that both counts were severity level 1 person felonies but "punishable by a term of life in prison without the possibility of parole for 25 years." In the first count of aggravated indecent liberties with a child, Malmstrom was accused of intentionally fondling I.J.E., a 9-year-old female child. In the second count of aggravated indecent liberties with a child, Malmstrom was accused of fondling S.M.E., a 7-year-old female child. When charged, Malmstrom was 50 years old. Moreover, Malmstrom is I.J.E. and S.M.E.'s grandfather.

The record on appeal includes very little information about the underlying facts of Malmstrom's case. What is evident, however, is that Malmstrom confessed to the police that he molested I.J.E. and S.M.E. Malmstrom's presentence investigation report stated that "[t]he abuse involved fondling and oral sex." According to one of Malmstrom's written documents to the court, he stated that he felt "sadness, gr[i]ef, and a great sense of loss because of [his] actions." In their separate victim statement reports, both I.J.E. and S.M.E. stated that they "felt scared" when their grandfather touched them.

Malmstrom eventually accepted a plea deal, pleading guilty to two counts of attempted aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A) and K.S.A. 21-3301(a), (c). The State's attorney explained that Malmstrom was given a deal, reducing the completed aggravated indecent liberty with a child counts to attempted counts, because I.J.E. and S.M.E.'s parents did not want to put the children through the stress of trial or the stress of knowing they played a role in sending their grandfather to prison.

2

Before sentencing, Malmstrom moved for a durational departure. The trial court granted the durational departure motion, but it did so because it believed that Malmstrom would be sentenced to life imprisonment without the possibility of parole for 25 years. Including the departure, the trial court ultimately sentenced Malmstrom to a total 240 months' imprisonment followed by a term of 36-months' postrelease supervision. The trial court explained that it was granting the departure motion "based on the wishes of the victims, the defendant's cooperation in the investigation and the lack of substantial criminal history."

Malmstrom appealed his sentence to the Kansas Supreme Court. Our Supreme Court reversed Malmstrom's sentence because although attempted aggravated indecent liberties with a child required an off-grid lifetime sentence without the possibility of parole for 25 years under K.S.A. 21-4643, K.S.A. 21-3301(c), the attempt statute, provided that an attempt to commit an off-grid felony should be sentenced as a severity level 1 felony. See *State v. Malmstrom*, 291 Kan. 876, 879, 249 P.3d 1 (2011). Our Supreme Court held that under the rule of lenity, the trial court was required to sentence Malmstrom as a nondrug, severity level 1, offender instead of an off-grid offender. *Malmstrom*, 291 Kan. at 880-81.

Upon resentencing, Malmstrom was facing a standard prison sentence of 253 months for each count of attempted aggravated indecent liberties with a child. The trial court again granted Malmstrom's durational departure motion based on the victims wishes, Malmstrom's cooperation, and Malmstrom's lack of criminal history. The trial court sentenced Malmstrom to two concurrent 155-month prison sentences followed by a term of 36 months' postrelease supervision.

Following his resentencing, the State moved to correct illegal sentence. The State asserted that when Malmstrom committed the two attempted aggravated indecent liberties with a child counts, K.S.A. 22-3717(d)(1)(G) and (d)(2) required that the trial court

3

sentence Malmstrom to a lifetime term of postrelease supervision as opposed to a 36-month term of postrelease supervision.

The trial court held a hearing on the State's motion. At the hearing, the State argued that the law required the imposition of lifetime postrelease supervision. Malmstrom responded that imposition of lifetime postrelease supervision would be cruel and unusual punishment based on the factors our Supreme Court outlined in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). The trial court disagreed, explaining:

"As indicated by the court in other hearings this morning, the issue is controlled by the *Freeman* decision. The court is to consider the *Freeman* factors. Two of the factors are legal in nature. That's the nature of the offense as compared, and the penalties imposed as compared to penalties of similar offenses in other jurisdictions. The second factor is more serious offenses within the State of Kansas compared to the sentences imposed for the offense of conviction.

"The court will find neither one of those *Freeman* factors applies in the case as has been affirmed on numerous occasions by the appellate courts.

"On a case specific fact under the *Freeman* decision the court is to consider the nature of the offense and the character of the offender. Specifically the court's going . . . to consider the danger to society, the facts of the crime, violent or nonviolent nature of the offense, extent of culpability and the penological purposes.

. . . .

"The nature of the offense the court finds to be a violent offense with young victims in a fiduciary relationship. There's no need to go into the facts. Certainly under any view they would be considered violent and unacceptable in a civilized society.

"Danger to society. The court will find there is a danger to society. Certainly I've indicted the, the facts of the crime.

"The extent of culpability. Mr. Malmstrom, to his benefit, has always readily admitted his involvement and has indicated his need that he sees to seek treatment. Hopefully he's doing that.

"The penological purposes. Certainly the primary purpose would be to see that no other young children are victimized in any such fashion so that certainly applies. So the

court will find it does not shock the court's sense to impose the mandatory life postrelease supervision and it is so ordered."

As a result, the trial court amended Malmstrom's sentence from 36 months' postrelease supervision to lifetime postrelease supervision on both concurrent counts of attempted aggravated indecent liberties with a child.

*Did the Trial Court Err by Sentencing Malmstrom to Lifetime Postrelease Supervision?*

On appeal, Malmstrom argues that the trial court erred when it sentenced him to lifetime postrelease supervision under K.S.A. 22-3717(d)(1)(G). Malmstrom recognizes that K.S.A. 22-3717(d)(1)(G) states that persons convicted of sexually violent crimes, which includes attempted aggravated indecent liberties with a child, are required to serve "a mandatory period of postrelease supervision for the duration of the person's natural life." Nonetheless, Malmstrom argues that imposition of lifetime postrelease supervision was improper because it is grossly disproportionate to the crimes he committed. Thus, he asserts it is cruel and unusual punishment under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution.

First, Malmstrom argues that the imposition of lifetime postrelease supervision was inappropriate based on the circumstances surrounding his particular case. Malmstrom asserts that his lifetime postrelease supervision violates § 9 of the Kansas Constitution Bill of Rights by explaining how the trial court erred in analyzing his case under the *Freeman* factors. At the same time, however, Malmstrom asserts that his lifetime postrelease supervision violates the Eighth Amendment to the United States Constitution under the case-specific proportionality analysis outlined in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). It seems Malmstrom recognizes that the *Freeman* factor analysis is nearly identical to a case-specific

5

proportionality analysis, and based on this recognition, he has combined his analysis into one section.

Second, Malmstrom argues that the imposition of lifetime postrelease supervision was cruel and unusual under the Eighth Amendment to the United States Constitution because lifetime postrelease supervision sentences should be categorically prohibited for persons who have committed attempted aggravated indecent liberties with a child. Using the categorical analysis approach detailed in *Graham*, Malmstrom asserts that this punishment is categorically disproportionate to his crime.

The State responds that Malmstrom's lifetime postrelease supervision does not violate either § 9 of the Kansas Constitution Bill of Rights or the Eighth Amendment to the United States Constitution. The State emphasizes that the trial court's reasoning for rejecting Malmstrom's argument that the imposition of lifetime postrelease supervision was sound and supported by the evidence. The State further argues that each of Malmstrom's arguments concerning why the imposition of lifetime postrelease supervision is cruel and unusual are unpersuasive.

*Preservation*

Before engaging in further analysis, it is important to point out that Malmstrom is raising his categorical proportionality challenge to the imposition of lifetime postrelease supervision for the first time on appeal. Generally, issues not raised below, including constitutional issues, may not be raised for the first time on appeal. *State v. Williams*, 298 Kan. 1075, 1084, 319 P.3d 528 (2014). "But there are exceptions to this rule, including when the claim involves only questions of law, arises on proven or admitted facts, and is determinative of the case." *Williams*, 298 Kan. at 1084. One such exception is a categorical proportionality challenge. *Williams*, 298 Kan. at 1084. Although Malmstrom is raising this issue for the first time on appeal, this issue is properly before this court.

6

*Standard of Review*

Typically, appellate courts exercise unlimited review when determining whether a statute violates a defendant's constitutional rights. *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012). Yet, when appellate courts determine whether a sentence is cruel or unusual, "court[s] must make both legal and factual determinations." *Mossman*, 294 Kan. at 906. "All of the evidence is reviewed, but not reweighed, to determine if there is sufficient support for the district court's factual findings, and the district court's legal conclusions drawn from those facts are reviewed de novo." *Mossman*, 294 Kan. at 906.

*Applicable Law*

K.S.A. 22-3717(d)(1)(G) states that "persons convicted of a sexually violent crime . . . and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." The crime of attempted aggravated indecent liberties with a child constitutes a sexually violent crime. See K.S.A. 22-3717(d)(2)(C) and (K).

Section 9 of the Kansas Constitution Bill of Rights states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." Imposition of lifetime postrelease supervision is statutorily mandated. Our Supreme Court has explained that "'punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" *State v. McDaniel & Owens*, 228 Kan. 172, 183, 612 P.2d 1231 (1980) (quoting *Freeman*, 223 Kan. at 367). Nevertheless, when a statute is challenged as unconstitutional, courts have a duty to resolve issues in favor of constitutionality if such a construction can be made. *State v. Cameron*, 294 Kan. 884, 889, 281 P.3d 143 (2012).

7

To determine whether a punishment violates § 9 of the Kansas Constitution Bill of Rights, courts must analyze challenges under the three-prong test promulgated in *Freeman*. The three *Freeman* factors are as follows:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
>
> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and
>
> "(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

"'Ultimately, one consideration may weigh so heavily that it directs the final conclusion,' but 'consideration should be given to each prong of the test.'" *Cameron*, 294 Kan. at 890 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 [2008]). Still, no single *Freeman* factor controls. *Cameron*, 294 Kan. at 890.

The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Under the Eighth Amendment, defendants can make two types of challenges: (1) that their punishment is disproportional to their crimes based on case-specific analysis; and (2) that their punishment is disproportional to their crimes based on a categorical prohibition against a specific punishment for a specific crime. *Graham*, 560 U.S. at 60-61.

The first type of challenge—case-specific challenges—are analyzed in a manner virtually identical to the *Freeman* factors. In *Graham*, the United States Supreme Court explained that courts must review defendants' case specific challenges by

"comparing the gravity of the offense and the severity of the sentence. [Citation omitted.] '[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation omitted.] If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual. [Citation omitted.]" *Graham*, 560 U.S. at 60 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680, 115 L. Ed. 2d 836 [1991] ).

The second type of challenge—categorical challenges—are analyzed under a two-prong test:

"The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning and purpose,' the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. [Citation omitted.]" *Graham*, 560 U.S. at 61.

Succinctly, this test involves determining if there is a legitimate reason for imposing the specific type of punishment. In *Graham*, the United States Supreme Court held that retribution, deterrence, incapacitation, and rehabilitation can all serve as legitimate reasons for a specific punishment. 560 U.S. at 71.

9

Freeman *Factors and Case-Specific Analysis*

Malmstrom first argues that this court must reverse the trial court's imposition of lifetime postrelease supervision because it is cruel and unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights under the *Freeman* factors and in violation of the Eighth Amendment to the United States Constitution under the identical factors detailed in *Graham*. Because Malmstrom combines his *Freeman* factor analysis challenging his punishment under § 9 of the Kansas Constitution Bill of Rights with his *Graham* factor analysis challenging his punishment under the Eighth Amendment to the United States Constitution, we will consider these arguments together. Again, both the *Freeman* factors and *Graham* factors require courts to evaluate: (1) the nature or gravity of the offense and the character of the offender; (2) the punishments for more serious offenses within Kansas; and (3) the punishment for similar offenses in other jurisdictions. See *Freeman*, 223 Kan. at 367; accord *Graham*, 560 U.S. at 60.

*Nature of the Offense and Character of the Offender*

To begin with, Malmstrom focuses on the nature of his offenses and his character. Malmstrom does not assert that the trial court's findings regarding the nature of his offenses and his character were factually incorrect. Instead, Malmstrom argues that the trial court failed to take into consideration certain factors that made the imposition of lifetime postrelease cruel and unusual punishment. Specifically, Malmstrom argues that the following facts concerning the nature of his offenses and his character support that the imposition of lifetime postrelease was cruel and unusual punishment: (1) He was convicted of two counts of attempted aggravated indecent liberties with a child as opposed to two counts of completed aggravated indecent liberties with a child; (2) he did not use a weapon to commit the crime, meaning his crime was nonviolent; and (3) he has no prior sex crime convictions. Nevertheless, none of Malmstrom's arguments are convincing.

10

First, regarding Malmstrom's argument that he was convicted of an attempted crime instead of a completed crime, it seems Malmstrom makes this argument because the underlying facts indicate that he did complete two counts of aggravated indecent liberties with a child. Below, the State explained that it was giving Malmstrom a deal for attempted crimes, despite his full confession to the police, because the family wanted to shield the granddaughters from any more trauma. All the same, even without considering that the crimes were completed, the fact that he was convicted of attempted crimes does not negate the danger Malmstrom presents to society.

Under K.S.A. 21-3301(a), "an attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." In other words, but for some intervening act, a person who attempted a crime would have completed the crime. Thus, persons convicted of attempted crimes pose just as much danger to society as those who have completed crimes.

Second, although Malmstrom emphasizes that he did not use a weapon, he ignores that Kansas has deemed that child sex crimes are inherently violent. Our Supreme Court has explained that sex crimes against minors are "'particularly heinous crimes.'" *Mossman*, 294 Kan. at 909 (quoting *People v. Dash*, 104 P.3d 286, 293 [Colo. App. 2004]). While Malmstrom may not have used a weapon, he, a 50-year-old man, took advantage of his 7-year-old and 9-year-old granddaughters. Thus, the lack of a weapon does not weigh in Malmstrom's favor. Moreover, our Supreme Court has recognized that it is because of the vulnerability of children, the risk of children suffering major long-term psychological effects from sexual abuse, that the legislature enacted legislation categorizing child sex crimes as sexually violent crimes. *Mossman*, 294 Kan. at 909; K.S.A. 22-3717(d)(2)(C), (K); see also *State v. Sutton*, No. 114,646, 2016 WL 3460423, at *3 (unpublished opinion) (where this court rejected the same argument that the lack of

11

weapon does not make a child sex crime a nonviolent crime), *petition for rev. filed* July 1, 2016.

Third, our Supreme Court has previously rejected Malmstrom's argument regarding lack of prior sex crime convictions. In *Mossman*, Mossman asserted that his lack of criminal history made the imposition of lifetime postrelease supervision for his aggravated indecent liberties conviction unconstitutional. Our Supreme Court held that even defendants with no criminal history may be sentenced to lifetime postrelease supervision when other evidence supported the imposition. 294 Kan. at 911-12. For Mossman, our Supreme Court held that even without any criminal history, imposition of lifetime postrelease was constitutional "because of [Mossman's] lack of impulse control, [Mossman's] rebellious character, and [Mossman's] history of drug use." *Mossman*, 294 Kan. at 911-12.

Here, unlike *Mossman*, Malmstrom does not have a clean slate. In 1974, Malmstrom was convicted of residential burglary and theft. Consequently, Malmstrom already has criminal history supporting that he is more likely to reoffend. More importantly, Malmstrom was not convicted of just one count of attempted aggravated indecent liberties with a child, but two counts of attempted aggravated indecent liberties with a child. Although most of the facts surrounding his crimes are unclear, according to I.J.E.'s victim statement, she felt guilty for not telling her mother about Malmstrom touching her inappropriately when it first happened because it allowed Malmstrom to touch S.M.J. inappropriately at a later date. This means that Malmstrom did not commit his crime against I.J.E. and his crime against S.M.J. at the same time. Instead, he committed the crime against I.J.E. and then later committed the crime against S.M.J. Obviously, this evidence indicates that Malmstrom has engaged in repeated acts of sex crimes against children. Thus, Malmstrom has predatory tendencies that present a serious danger to society. Malmstrom's predatory tendencies necessitates the intensive monitoring connected to lifetime postrelease supervision.

12

Finally, it is important to emphasize that lifetime postrelease supervision serves important penological goals, a fact Malmstrom seemingly ignores in making his analysis. As the *Mossman* court noted, lifetime postrelease supervision helps ensure "legitimate penological goals such as deterrence, incapacitation, and rehabilitation." 294 Kan. at 911. Moreover, as the State explains in its brief, the goal of deterrence "is particularly legitimate given sex offenders' higher rate of recidivism."

In summary, none of the case-specific reasons that Malmstrom has offered in support of his contention that the imposition of lifetime postrelease supervision is cruel and unusual punishment under § 9 of the Kansas Constitution Bill of Rights or the Eighth Amendment to the United States Constitution are persuasive. As the trial court found in ordering lifetime postrelease supervision, the nature of Malmstrom's crimes were violent, he committed the crimes against very young children, and he the committed the crimes against children with whom he had a fiduciary relationship. Although Malmstrom has always admitted culpability for the crimes, this alone does not outweigh the danger to society he presents and the underlying penological goals of lifetime postrelease supervision. Accordingly, the imposition of lifetime postrelease supervision was constitutional based on the nature of Malmstrom's offenses and Malmstrom's character.

*Comparison to More Serious Offenses Within Kansas*

Next, Malmstrom argues that the imposition of lifetime postrelease supervision was cruel and unusual punishment because he would have received a less severe punishment if he had committed a more serious crime. Malmstrom points out that he would have been sentenced to 36 months' postrelease supervision if he had committed the following more serious offenses: second-degree murder, voluntary manslaughter, aggravated kidnapping, aggravated trafficking, electronic solicitation, terrorism and illegal use of weapons of mass destruction, manufacture of a controlled substance, and human trafficking. See K.S.A. 22-3717. Malmstrom contends that the fact these crimes

13

have shorter postrelease supervision terms is proof that the imposition of lifetime postrelease supervision for attempted aggravated indecent liberties with a child is cruel and unusual punishment.

The State responds by citing *State v. Toahty-Harvey*, 297 Kan. 101, 109, 298 P.3d 338 (2013), for the proposition that Kansas courts have repeatedly held that lifetime postrelease supervision is not constitutionally disproportionate to the sentences imposed for more serious crimes in Kansas. This is essentially what the trial court stated below, ruling that it did not find Malmstrom's argument convincing because appellate courts have consistently rejected this argument.

Our Supreme Court has consistently rejected the argument that the fact more serious crimes have shorter postrelease supervision terms in Kansas means that the imposition of lifetime postrelease supervision for child sex crimes is a disproportionate punishment. See *State v. Funk*, 301 Kan. 925, 941-42, 349 P.3d 1230 (2015); *Toahty-Harvey*, 297 Kan. at 109; *Cameron*, 294 Kan. at 892-93. Our Supreme Court has held that the key for testing disproportionality is not the term of postrelease supervision alone, but the term of postrelease supervision in conjunction with the term of imprisonment. *Mossman*, 294 Kan. at 912-13; *Cameron*, 294 Kan. at 892-93; see also *Sutton*, 2016 WL 3460423, at *4-5 (where this court rejected an identical argument based on the fact our Supreme Court has consistently held that lifetime postrelease supervision for child sex crime convictions is not disproportionate to the punishments for more serious crimes).

At the end of his brief, Malmstrom asserts that this court should distinguish his case from *Mossman* and *Cameron* like this court did in *State v. Proctor*, No. 104,697, 2013 WL 6762296 (Kan. App. 2013) (unpublished opinion). In *Proctor*, this court recognized that the *Mossman* court rejected the argument that the length of postrelease supervision for defendants convicted of child sex crimes was disproportionate to similar or more serious offenses within Kansas. 2013 WL 6762296, at *6-7. Nevertheless, the

14

*Proctor* court held that this fact does "not directly address the extraordinary vice built into lifetime postrelease supervision—the doomsday consequences for later being convicted of any felony." 2013 WL 6762296, at *7. Specifically, the *Proctor* court took issue with the fact that Proctor, who was 19 years old when he committed an aggravated indecent solicitation of a child, could be sent to prison for even a minor felony, like passing a bad check, for the rest of his life if he were to commit this crime while serving lifetime postrelease supervision. See K.S.A. 2009 Supp. 75-5217(c). The *Proctor* court emphasized that lifetime postrelease supervision "ceases to promote rehabilitation if an offender is returned to prison for life for a felony conviction." 2013 WL 6726286, at *6. Accordingly, the *Proctor* court held that the imposition of lifetime postrelease supervision violated § 9 of the Kansas Constitution Bill of Rights under the second *Freeman* factor. 2013 WL 6726286, at *8. Based on *Proctor*'s reasoning, Malmstrom argues that his punishment is cruel and unusual because he will be disproportionally punished for *future* criminal conduct.

Yet, there are two reasons why Malmstrom's reliance on *Proctor* is unpersuasive. First, when *Proctor* was decided, K.S.A. 2009 Supp. 75-5217(c) mandated life imprisonment for any new felony conviction committed while serving lifetime postrelease supervision. In 2013, however, the legislature amended this provision, allowing the prisoner review board to determine the appropriate term of confinement for a new felony conviction while serving postrelease supervision. See K.S.A. 2015 Supp. 75-5217(c). Thus, 2015 Supp. K.S.A. 75-5217(c) no longer carries the same "doomsday consequences for later being convicted of any felony." *Proctor*, 2013 WL 6762296, at *7.

Second, our Supreme Court has disapproved of *Proctor*'s holding. In *Funk*, when Funk relied on *Proctor* for the proposition that lifetime postrelease supervision was unconstitutional because he could commit any new felony and return to prison for life, our Supreme Court rejected Funk's argument by stating: "But the short answer is to recall that we have already disavowed considering what might happen if a defendant happens to

15

commit a subsequent felony." 301 Kan. at 938. The *Funk* court then pointed out that in *Mossman*, it distinguished "between the potential consequences for violating postrelease supervision conditions by committing [a] new felony and those for the crime actually committed, *i.e.*, imposition of lifetime postrelease supervision." *Funk*, 301 Kan. at 938 (citing *Mossman*, 294 Kan. at 915-16).

Absent some indication our Supreme Court is departing from its previous position, this court is duty bound to follow our Supreme Court precedent. *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). As a result, precedent dictates that this argument is fatally flawed. Consequently, the imposition of lifetime postrelease supervision for Malmstrom's attempted aggravated indecent liberties with a child convictions was not disproportionate to the sentences for more serious crimes committed in Kansas.

As a final note, although the State has not mentioned this argument in its brief, it is also important to point out that Malmstrom was convicted of a severity level 1 person felony. See K.S.A. 21-3301(c); K.S.A. 21-3504(a)(3)(A); *Malmstrom*, 291 Kan. at 879. Moreover, if Malmstrom had committed his crimes following the recodification of the criminal code in 2011, his crimes of attempted aggravated indecent liberties with a child would have constituted off-grid person felonies. See K.S.A. 2015 Supp. 21-5506(b)(3)(A), (c)(3). Regardless, outside of second-degree murder, which the United States Supreme Court has recognized as a more serious crime, all of the crimes Malmstrom asserts are more serious crimes are severity level 1, 2, or 3 felonies. See *Kennedy v. Louisiana*, 554 U.S. 407, 128 S. Ct. 2641, 171 L. Ed. 2d 525, *opinion modified on denial of reh'g* 554 U.S. 945 (2008). Thus, most of Malmstrom's comparisons to sentences for other Kansas crimes are off the mark because his comparisons involve equally serious or less serious offenses.

*Comparison to Similar Offenses in Other Jurisdictions*

Last, Malmstrom argues that a comparison of Kansas' mandatory imposition of lifetime postrelease supervision for his attempted aggravated indecent liberties with a child convictions to other states' punishments for similar crimes establishes that the punishment is cruel and unusual. Specifically, Malmstrom argues that "18 states, including Kansas, impose mandatory lifetime postrelease sentences for K.S.A. 21-3504(a)(3)(A)—like offenses." But then Malmstrom continues by asserting that of those 18 states, only 12 states mandate lifetime postrelease supervision for attempted crimes. Next, Malmstrom asserts that only 4 of those 12 states make the sentence irrevocable, and only 2 of those 4 states—Kansas and Nebraska—mandate irrevocable lifetime postrelease supervision for a first-time attempted child sex crime.

The State responds by asserting that this court should affirm the trial court's rejection of this argument because Kansas courts have consistently held that Kansas' imposition of lifetime postrelease supervision for child sex crimes is not disproportionate to the punishment imposed for similar crimes in other jurisdictions. Again, the State is correct. In both *Mossman* and *Cameron*, after comparing Kansas' punishment for child sex crimes to punishments in other states, our Supreme Court held that the imposition of lifetime postrelease supervision was not cruel or unusual. *Mossman*, 294 Kan. at 919-20; *Cameron*, 294 Kan. at 894-95.

In *Mossman*, for instance, our Supreme Court recognized that "only a handful of states impose punishment as absolute as Kansas' requirement." 294 Kan. at 920. Yet, our Supreme Court held that such punishment was not cruel and unusual because that "Kansas is not alone in imposing mandatory lifetime postrelease supervision for crimes such as Mossman's [aggravated indecent liberties with a child conviction], and we are not aware of any court that has found lifetime postrelease supervision of a violent sex offender to be cruel and unusual punishment." 294 Kan. at 920. Furthermore, our

17

Supreme Court has continued to stand by this holding even when defendants have been convicted of attempted child sex crimes. See *Funk*, 301 Kan. at 942-43 (where our Supreme Court held that the imposition of lifetime postrelease supervision was not disproportionate to sentences in other jurisdictions when Funk had been convicted of attempted indecent solicitation of a child, a level 8 person felony).

In his analysis, Malmstrom has never asserted that there has been a wave of change in the laws in other jurisdictions. Accordingly, our Supreme Court's holdings in *Mossman*, *Cameron*, and *Funk* are still good law. In turn, Malmstrom's argument is flawed.

*Conclusion under Case-Specific Factors*

Each of Malmstrom's arguments why the trial court's imposition of lifetime postrelease supervision is cruel and unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights under the *Freeman* factors and in violation of the Eighth Amendment to the United States Constitution under the substantively identical *Graham* factors fail. Malmstrom's arguments have been consistently rejected by Kansas appellate courts. Moreover, based on the nature of Malmstrom's crimes and his character, the trial court's finding that it was neither cruel nor unusual punishment to impose lifetime postrelease supervision was supported by sufficient evidence and appropriate under Kansas law.

*Categorical Analysis under the Eighth Amendment to the United States Constitution*

Finally, Malmstrom argues that the imposition of lifetime postrelease supervision was cruel and unusual punishment under the Eighth Amendment to the United States Constitution because such punishment is categorically disproportionate to the crime of attempted aggravated indecent liberties with a child. Under the categorical analysis

18

approach, courts must consider the proportionality of lifetime postrelease supervision for Malmstrom's specific convictions, *i.e.*, attempting to commit "lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child of the offender, or both." See K.S.A. 21-3504(a)(3)(A); K.S.A. 21-3301(a).

Again, this analysis involves a two-prong test where this court must: (1) "consider[] [the] 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue"; and (2) consider whether the punishment is cruel and unusual based on "'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning and purpose.'" *Graham*, 560 U.S. at 61.

*National Consensus Against Lifetime Postrelease Supervision*

Repeating his analysis about Kansas and Nebraska being the only states that mandate irrevocable lifetime postrelease supervision for first-time attempted child sex crimes, Malmstrom argues that there is a national consensus against lifetime postrelease supervision for his convictions. Malmstrom provides no other argument explaining why a national consensus against lifetime postrelease supervision exists.

Nevertheless, this court has rejected this exact argument in *State v. Reed*, 51 Kan. App. 2d 107, 341 P.3d 616 (2015), *rev. denied* 304 Kan. ___ (April 16, 2016). Reed, like Malmstrom, had been convicted of attempted aggravated indecent liberties with a child. Moreover, Reed, like Malmstrom, argued that there was a national consensus against lifetime postrelease supervision for his crime because "[o]ther than Kansas, Nebraska is the only state that imposes mandatory lifetime postrelease supervision on individuals for a first time attempted indecent touching offense." 51 Kan. App. 2d at 111. The *Reed* court

19

rejected that argument because even though only two states imposed lifetime postrelease supervision for Reed's specific offense of attempted aggravated indecent liberties with a child, his offense fell under a broader class of sexually violent crimes. 51 Kan. App. 2d at 112-13. The *Reed* court explained that under the broader class of sexually violent crimes, imposition of lifetime postrelease supervision is not rare but "a widespread phenomenon." 51 Kan. App. 2d at 113; see also *Sutton*, 2016 WL 3460423, at *8; *State v. Hindman*, No. 110,261, 2014 WL 5312925, at *6-7 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1015 (2015); *State v. Russell*, No. 107,588, 2013 WL 3867180, at *4-6 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1273 (2014); *State v. Barrera*, No. 104,664, 2013 WL 517581, at *9-10 (Kan. App. 2013) (unpublished opinion), *rev. denied* 297 Kan. 1248 (2013).

In summary, this court has previously rejected an identical argument. Nothing in Malmstrom's brief provides any new analysis why the reasoning in *Reed* is flawed. Thus, following *Reed*'s precedent, it is readily apparent that Malmstrom's argument regarding a national consensus is unpersuasive.

*Exercise of Independent Judicial Discretion*

Next, Malmstrom argues that the imposition of lifetime postrelease supervision for attempted aggravated indecent liberties with a child convictions does not serve any legitimate penological goals. Specifically, Malmstrom argues that his lifetime postrelease supervision does not serve the goals of retribution, deterrence, incapacitation, or rehabilitation.

Regarding retribution, Malmstrom argues that his sentence fails to be directly related to his actual culpability because the more serious offense of second-degree murder has a shorter postrelease supervision term. Yet, as previously discussed, our Supreme Court has held that the key for determining disproportionality is not the term of

20

postrelease supervision alone, but the term of postrelease supervision in conjunction with the term of imprisonment. *Mossman*, 294 Kan. at 912-13; *Cameron*, 294 Kan. at 892-93. As a result, this same logic negates Malmstrom's arguments concerning the retributive purposes of lifetime postrelease supervisions.

Regarding deterrence, Malmstrom argues that any deterrence benefits cannot justify lifetime postrelease supervision. Malmstrom hinges this argument on the idea that lifetime postrelease supervision is grossly disproportionate to the crime of attempted aggravated indecent liberties with a child. Nevertheless, as considered at length already, Kansas courts have consistently held that lifetime postrelease supervision is not grossly disproportionate punishment in child sex crime cases. See *Funk*, 301 Kan. at 941-42; *Toahty-Harvey*, 297 Kan. at 109; *Cameron*, 294 Kan. at 892-93; *Mossman*, 294 Kan. at 912-13. Because Malmstrom's argument regarding deterrence hinges on an argument that has been consistently rejected by our Supreme Court, he has failed to establish that there are no legitimate penological deterrence goals connected to the imposition of lifetime postrelease supervision.

Regarding incapacitation, Malmstrom recognizes that pedophiles have a higher rate of recidivism. Yet, Malmstrom argues that the goals of incapacitation cannot be one size fits all. Regarding rehabilitation, Malmstrom argues that rehabilitation cannot be an underlying goal of lifetime postrelease supervision because no matter how much offenders improve, they will never be released from lifetime postrelease supervision.

Nevertheless, our Supreme Court has held that the goals of incapacitation and rehabilitation are very important penological purposes of lifetime postrelease supervision. *Mossman*, 294 Kan. at 930; *Cameron*, 294 Kan. at 898. For example, in *Cameron* our Supreme Court quoted *United States v. Williams*, 636 F.3d 1229, 1234 (9th Cir. 2011), in explaining that incapacitation and rehabilitation are "'are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders

21

to strike again." 294 Kan. at 898. Moreover, the *Cameron* court explained that "'[s]upervised release can further the end of rehabilitating sex offenders. . . . Relatedly, supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may be able to detect problems before they result in irreparable harm to innocent children.'" 294 Kan. at 898 (quoting *Williams*, 636 F.3d at 1234).

Because our Supreme Court has held that lifetime postrelease supervision serves the legitimate penological goals of incapacitation and rehabilitation, Malmstrom cannot successfully argue that lifetime postrelease supervision is categorically disproportionate punishment in violation of the Eighth Amendment to the United States Constitution. As the *Reed* court aptly explained:

> "While we recognize that lifetime postrelease supervision is a severe sanction, and we understand that reasonable people can take the view that such a sanction is too harsh, the legislature, in its considered judgment as representatives of the people, has determined such a sanction to be appropriate in such cases. [A defendant] cannot show that the Kansas Supreme Court's rulings on this subject do not apply to [his or her] crime of attempted aggravated indecent liberties with a child, and we do not find that the imposition of lifetime postrelease supervision is categorically cruel and unusual punishment." 51 Kan. App. 2d at 114-15.

Thus, for the foregoing reasons, Malmstrom's arguments that the imposition of lifetime postrelease supervision are categorically cruel and unusual punishment must fail.

*In Summary*

Although Malmstrom has argued that the imposition of lifetime postrelease supervision is categorically disproportional to his crimes of attempted aggravated indecent liberties with a child, his punishment is not disproportionate to punishments in

22

other states, and his punishment serves legitimate penological goals. Nothing Malmstrom has argued on appeal distinguishes his case from cases where this court and our Supreme Court have ruled against the position for which he argues. As a result, Malmstrom has failed to establish that the imposition of lifetime postrelease supervision is cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Affirmed.