NOT DESIGNATED FOR PUBLICATION

No. 123,403

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NANNI F. CASTELLI,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Opinion filed May 27, 2022. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM: Nanni F. Castelli appeals the district court's imposition of lifetime postrelease supervision, arguing the punishment is cruel and unusual and thus unconstitutional as applied to him. Finding no error, we affirm.

*Factual and Procedural Background*

The State charged Castelli with two counts of aggravated criminal sodomy of a child under 14 and one count of aggravated intimidation of a witness or victim in 2018,

1

based on statements from his 8-year-old relative, for crimes committed over a one-year period beginning in August 2012. Castelli pleaded no contest to three amended charges—one count of aggravated indecent solicitation of a child and two counts of lewd and lascivious behavior. The district court sentenced Castelli to 40 months in prison and 24 months of postrelease supervision.

The State later moved to correct an illegal sentence, arguing aggravated indecent solicitation of a child constituted a "sexually violent" crime, so K.S.A. 2012 Supp. 22-3717(d)(l)(G) required a mandatory term of lifetime postrelease supervision. In response, Castelli challenged the constitutionality of imposing lifetime postrelease supervision under the facts of his case. The district court held a hearing. Although the judge had no transcript of Castelli's sentencing hearing, she had reviewed the record and had presided over Castelli's presentencing proceedings. As Castelli had requested, the district court applied the factors outlined in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), to the facts. After considering Castelli's argument, the district court determined lifetime postrelease supervision did not violate any constitutional prohibition against cruel and unusual punishment and thus denied Castelli's motion. The district court then granted the State's motion to correct Castelli's illegal sentence and ordered Castelli's sentence amended to include lifetime postrelease supervision.

Castelli timely appeals.

*Is Lifetime Postrelease Supervision Unconstitutional as Applied?*

Castelli acknowledges our Supreme Court's holding in *State v. Cameron*, 294 Kan. 884, 895-98, 281 P.3d 143 (2012), finding mandatory lifetime postrelease supervision for aggravated indecent solicitation of a child convictions is not facially unconstitutional. See also *State v. Mossman*, 294 Kan. 901, 921, 281 P.3d 153 (2012) (rejecting same categorical challenge for aggravated indecent liberties with a child). But he raises an as-

applied challenge to the constitutionality of the mandatory penalty, maintaining its imposition to him constitutes cruel and unusual punishment under our state and federal Constitutions.

Alternatively, Castelli asks us to "reconsider" *Cameron*'s holding. But we are "duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position." *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Because we find no indication that the court is departing from its position, we summarily deny Castelli's request to reconsider *Cameron*. See *Meyer*, 51 Kan. App. 2d at 1072; see also *McCullough v. Wilson*, 308 Kan. 1025, 1032, 426 P.3d 494 (2018) ("'[O]nce a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised.'"); *State v. Creed*, No. 122,609, 2021 WL 219248, at *1 (Kan. App.) (applying these principles in rejecting similar categorical claim for aggravated indecent solicitation of a child conviction), *rev. denied* 314 Kan. 856 (2021).

*Preservation*

Generally, a defendant must raise a specific constitutional challenge to the statute before the district court to preserve the issue for appeal. *State v. Robinson*, 306 Kan. 1012, 1025, 399 P.3d 194 (2017).

Castelli correctly states that he preserved an as-applied constitutional challenge to the district court's imposition of lifetime postrelease supervision. But Castelli asks this court to make factual findings based on an argument he did not raise in the district court. There, Castelli focused his argument on his lack of a significant criminal history. He emphasized that he had never committed violent or sexual offenses and that his solicitation conviction was a "mid-box felony." But on appeal, Castelli also alleges he had a drinking problem when he committed his crimes. He thus suggests that he was

3

somehow less culpable or less likely to recommit his crimes because at that time, he regularly consumed alcohol to the point of blacking out or forgetting entire days.

We will not make the type of factual finding Castelli's argument requires on appeal. And as this court explained in *State v. Taylor*, No. 118,859, 2019 WL 3242200, at *2-3 (Kan. App. 2019) (unpublished opinion), it is a defendant's responsibility to ensure the district court makes adequate factual findings to allow appellate review of this as-applied constitutional claim:

> "Supreme Court Rule 165 (2019 Kan. S. Ct. R. 221) requires the district court to make adequate findings of fact and conclusions of law on matters submitted to it without a jury. In *Seward*, our Supreme Court held that the responsibility for a lack of adequate findings and conclusions regarding the *Freeman* factors is shared between the district judge, the defendant, and the defense counsel. *Seward*, 289 Kan. at 720.While the claim that lifetime postrelease supervision constituted cruel or unusual punishment was relatively new at the time of *Seward*, the court stated:

> > "'In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary.' 289 Kan. at 721.

> "Appellate courts have followed the warning in *Seward* and declined to review constitutional challenges to sentencing statutes when the litigant failed to ensure the district court made adequate findings and conclusions on the *Freeman* factors to ensure a sufficient record for review. See, e.g., *State v. Reed*, 300 Kan. 494, 513, 332 P.3d 172 (2014) ('[T]his court has consistently declined to address a defendant's appellate argument regarding cruel and/or unusual punishment when the defendant has failed to develop the record below.'); *State v. Reed*, 50 Kan. App. 2d 1133, 1138-39, 336 P.3d 912 (2014) (defendant's failure to ensure district court made adequate findings and conclusions on *Freeman* challenge foreclosed this court's review); *State v. Beck*, No.

109,657, 2014 WL 2871322, at *2-3 (Kan. App. 2014) (unpublished opinion) (where 'the district court made no factual findings in relation to Beck's specific case,' appellate court held 'it is impossible for this court to review Beck's case-specific challenges to the constitutionality of lifetime postrelease supervision, and these claims on appeal must be dismissed')."

Applying these principles, we dismiss Castelli's unpreserved factual claim about his alcohol consumption, while reaching the merits of his preserved claims. See 2019 WL 3242200, at *3.

We also note that Castelli does not claim that K.S.A. 2012 Supp. 22-3717 is vague or contradictory, so we consider that issue waived or abandoned. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (an issue not briefed is considered waived or abandoned).

*Standard of Review and Basic Legal Principles*

We apply a bifurcated standard of review to the district court's ruling. We review the district court's factual findings for substantial competent evidence and its legal conclusions de novo. *State v. Funk*, 301 Kan. 925, 933, 349 P.3d 1230 (2015); *State v. Ross*, 295 Kan. 424, 425-26, 284 P.3d 309 (2012).

The constitutionality of a sentencing statute is a question of law subject to unlimited appellate review. *State v. Mattox*, 305 Kan. 1015, 1019, 390 P.3d 514 (2017). We presume statutes are constitutional and resolve all doubts in favor of a statute's validity. We must interpret a statute in a way that makes it constitutional if any reasonable construction would maintain the Legislature's apparent intent. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018); but see *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1132-33, 442 P.3d 509 (2019) (presumption of constitutionality does not

apply to a statute dealing with "'fundamental interests'" protected by the Kansas Constitution).

*Applicable Test*

We review Castelli's claim under section 9 of the Kansas Constitution Bill of Rights by considering the three factors set out in *Freeman*, which include: (1) consideration of the nature of the offense and the character of the offender, examined with particular regard to the degree of danger presented to society; (2) a comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses; and (3) a comparison of the penalty with punishments in other jurisdictions for the same offense. 223 Kan. at 367. No one factor controls, and we must address all three factors to complete this analysis. *State v. Riffe*, 308 Kan. 103, 109, 418 P.3d 1278 (2018).

Castelli's claim under the Eighth Amendment to the United States Constitution requires a similar analysis. But, under this test, we will reach the second and third factors only if we determine a gross disproportionality exists under the first factor. See *State v. Gomez*, 290 Kan. 858, Syl. ¶¶ 4-5, 235 P.3d 1203 (2010); see also *Mossman*, 294 Kan. at 924-25 (noting that unlike Eighth Amendment inquiry, section 9 analysis "requires consideration of all three factors").

The district court found all three factors weighed against Castelli. After reviewing each of the factors, we agree.

*First* Freeman *Factor*

When reviewing an offender's character under the first *Freeman* factor, we consider:

- degree of danger the defendant presents to society;

- facts of the crime;

- violent or nonviolent nature of the offense;

- extent of culpability for the resulting injury; and

- penological purposes of the prescribed punishment. 223 Kan. at 367.

In the district court, Castelli compared his case to the facts presented in *State v. Proctor*, 47 Kan. App. 2d 889, 280 P.3d 839 (2012) (*Proctor I*), and *State v. Proctor*, No. 104,697, 2013 WL 6726286, at *4-8 (Kan. App. 2013) (unpublished opinion) (*Proctor II*). The panel in *Proctor I* found that lifetime postrelease supervision was unconstitutional as applied to Proctor based in part on the lack of physical harm to the 12-year-old victim, Proctor's age (19 years old), his lack of criminal history, and his willingness to participate in available and likely effective treatment for sex offenders. 47 Kan. App. 2d at 923. Proctor was also sexually abused as a child but had never received counseling or treatment for it.

After granting review in *Proctor I*, our Supreme Court remanded the case for reconsideration because of *Mossman* and *Cameron*. On remand, the *Proctor II* panel again found that mandatory lifetime postrelease supervision was unconstitutional as applied to the defendant based on his personal history and circumstances. 2013 WL 6726286, at *4-8. When addressing the first *Freeman* factor, the *Proctor II* panel found:

> "Proctor was barely an adult himself at the time of the offenses. He had no juvenile or adult criminal record and, thus, no demonstrated incorrigibility. And nothing indicated Proctor was a serial sex offender with a trail of victims. Proctor had been a victim of sexual abuse in his adolescence and went without any professional help in coping with that trauma. None of that, of course, in any way excuses Proctor's actions in victimizing T.C. Nor does it undo the trauma to T.C. But it does suggest a defendant who, as the district court found, would very likely benefit from mental health therapy and counseling and sex offender treatment more than from incarceration. Moreover, as the

State agreed and the district court found, that disposition was compatible with the public safety." 2013 WL 6726286, at *4.

Here, the district court distinguished *Proctor I* and *Proctor II* from the facts. The district court found that Castelli's age, relationship to his victim, and lack of evidence showing he suffered similar abuse or trauma established that Castelli was dissimilar to the defendant in *Proctor II*.

The record supports these findings. According to the State's probable cause affidavit and complaint, Castelli was around 24 years old when he committed his crimes against his then 8-year-old victim, A.L. At Castelli's preliminary hearing, A.L. testified that Castelli was a relative, and she identified Castelli as one who lived in the same house as she did when the abuse occurred. So, unlike Proctor, Castelli had a familial relationship with his victim. The record is also void of evidence of past abuse or a willingness to participate in counseling services. See *Proctor I*, 47 Kan. App. 2d at 891, 923.

Castelli does not address these distinguishing facts but focuses on the penological goals of lifetime postrelease supervision. Our Supreme Court has explained that those goals include retribution, deterrence, incapacitation, and rehabilitation. *Mossman*, 294 Kan. at 902.

> "'Rehabilitation and incapacitation are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again. Supervised release can further the end of rehabilitating sex offenders. For instance, in this case, the express conditions of supervised release will require [the defendant] to receive sex offender treatment and to avoid situations where he may be tempted to offend again. Relatedly, supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may be able to detect problems before

they result in irreparable harm to innocent children.' [Citations omitted.]" *State v. Dull*, 302 Kan. 32, 57, 351 P.3d 641 (2015).

Castelli argues that our Supreme Court has wrongly "justified postrelease supervision of sex offenders in particular because of their supposed 'high rate of recidivism.' *Dull*, 302 Kan. at 57." He references information in his motion in the district court and contends that child sex offenders fit within a category of criminals *least* likely to reoffend. He also argues that his lack of significant criminal history shows he is particularly unlikely to commit another sexually violent offense.

But A.L. testified at the preliminary hearing that Castelli victimized her more than once and in more than one way. And as our Supreme Court explained in *Cameron*, aggravated solicitation of a child is a "very serious" crime that "can create significant psychological harm." 294 Kan. at 892. And although we cannot make factual findings on appeal about Castelli's alleged history or extent of alcohol abuse or his prospects of sobriety in the future, Castelli did admit that he drank high volumes of alcohol before abusing A.L.

Other than referring to his criminal history, Castelli fails to provide evidence of his history, psychology, or individual likelihood of recidivism. In absence of such evidence, "we adhere to our [Supreme Court's] previous observation that '[p]ostrelease supervision is largely designed to act as a deterrent to future crime, a goal that is particularly legitimate given sex offenders' higher rate of recidivism.' [Citation omitted.]" *Funk*, 301 Kan. at 939; see *State v. Hopkins*, No. 123,161, 2021 WL 5992092, at *3-4 (Kan. App. 2021) (unpublished opinion) (finding lack of information regarding history, psychology, and recidivism rendered case factually indistinguishable from *Funk* and denying section 9 claim based on analysis in *Funk*), *petition for rev. filed* January 13, 2022.

As his final effort to show his sentence is grossly disproportionate, Castelli highlights the significance of the penalty at issue:

> "Lifetime supervision will inflict serious consequences on Mr. Castelli. It will deprive him of the right to vote, serve on a jury, and hold public office for the rest of his life. This will . . . add hurdles to block Mr. Castelli[] from reentering life and becoming a productive citizen, presumably everyone's goal. These facts all weigh strongly in favor of finding that imposing lifetime postrelease supervision was grossly disproportionate in this case."

We recognize that lifetime supervision will prevent Castelli from enjoying certain rights and privileges, but we will not reweigh the facts. See *Mossman*, 294 Kan. at 912. Substantial competent evidence supports the district court's factual findings. In turn, those findings support the district court's legal conclusion that the first *Freeman* factor weighs against Castelli.

Because we find Castelli's sentence is not grossly disproportionate, his Eighth Amendment argument also fails. Castelli, like the defendant in *Cameron*, fails to provide a sufficient basis to support an Eighth Amendment claim:

> "[T]he United States Supreme Court has emphasized that it is only the rare case where the threshold comparison of the gravity of the offense and the harshness of the penalty will lead to an inference of gross disproportionality. This case is not such a rare case given the severity of the crime. Moreover, while the sentence is lengthy, lifetime postrelease supervision is not as harsh a punishment as imprisonment and is aimed at safely integrating a sex offender into society and protecting the public. Given the seriousness of the offense, the vulnerability of [the] victim, the potential psychological damage to the victim, and the penological goals of postrelease supervision, we conclude [appellant's] case-specific arguments are unavailing. [Citations omitted.]" *Cameron*, 294 Kan. at 896.

10

*Second* Freeman *Factor*

Next, we compare Castelli's lifetime postrelease supervision to punishments for more serious offenses in this jurisdiction. "[I]f among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect." *Freeman*, 223 Kan. at 367.

Castelli first compares his penalty to the penalty imposed for second-degree murder, citing *Proctor II*, 2013 WL 6726286, at \*7. But after acknowledging our Supreme Court's rejection of that type of comparison, Castelli raises an alternative claim. See *State v. Swint*, 302 Kan. 326, 345, 352 P.3d 1014 (2015). Castelli argues that because more serious sex offenses in Kansas carry the *same punishment* of mandatory lifetime postrelease supervision, his punishment is not proportionate to the seriousness of his crime. But Castelli did not raise this argument in the district court, so it is unpreserved.

In the district court, Castelli instead claimed that it was unfair to compare his punishment to punishments for other sex offenses. But this is the comparison our Supreme Court has found most appropriate under these circumstances:

> "Funk relies on a criminal penalties survey he presented to the district court, which identified 22 offenses severity level 1-4 that carry only a 36-month postrelease supervision term. Included within these offenses are aggravated human trafficking, electronic solicitation of a child, and second-degree murder. Funk's offense carried only a 9-to 11-month prison sentence and presumptive probation for a person with his criminal history score; however, the 22 offenses he identifies carry much longer prison terms of 38 to 653 months.

> "But this comparison is not persuasive because the proportionality of Funk's sentence cannot be judged solely by comparing his lifetime postrelease supervision period to that imposed for other crimes. See 294 Kan. at 913-14. A more apt comparison is that Kansas imposes a more serious punishment for more serious sex crimes. See, *e.g.,*

11

K.S.A. 2014 Supp. 21-5506(b)(1) (aggravated indecent liberties—sexual intercourse with child 14 or 15 years old—is a severity level 3 felony); K.S.A. 2014 Supp. 21-6804 (severity level 3 felony carries minimum term of 55 months' imprisonment); K.S.A. 2014 Supp. 22-3717(d)(1)(G), (d)(5)(C) (defendant convicted of aggravated indecent liberties subject to lifetime postrelease supervision)." 301 Kan. at 941-42.

Castelli fails to show us a crime that is more serious than aggravated solicitation of a child but carries a less severe, rather than equally severe, punishment. Cf. *Funk*, 301 Kan. at 942. And when addressing these types of claims, we do not consider only the length of postrelease supervision. Rather, we look to the total length of the sentence, including actual incarceration. *Mossman*, 294 Kan. at 912-13; *Cameron*, 294 Kan. at 892-93. But Castelli does not provide this type of information.

Again, we are duty-bound to follow Kansas Supreme Court precedent absent an indication of departure from that position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We find no such indication here and thus deny Castelli's argument under the second *Freeman* factor.

### *Third* Freeman *Factor*

Under the final *Freeman* factor, we compare Castelli's punishment to punishments in other jurisdictions for the same offense. Castelli references punishments for aggravated solicitation of a child in Nebraska, Missouri, Oklahoma, and Colorado that appear to be less severe. Castelli also correctly notes our Supreme Court's finding that "only a minority of states impose a similar punishment." *Cameron*, 294 Kan. at 894. Still, our Supreme Court has held that "the lifetime postrelease supervision sentence is proportionate to sentences mandated in some other jurisdictions and is not grossly disproportionate in light of the strength of the first *Freeman* factor." *Cameron*, 294 Kan. at 894. We must follow this ruling and thus affirm the district court. Cf. *State v. Sutton*, No. 114,646, 2016 WL 3460423, at *5 (Kan. App. 2016) (unpublished opinion) (finding

appellant failed to present evidence under third *Freeman* factor to sufficiently oppose analyses in *Mossman* and *Cameron* and affirming district court based on duty to follow precedent).

*Conclusion*

After reviewing the record and considering the three *Freeman* factors, we find substantial competent evidence supporting the district court's legal decision that the imposition of lifetime postrelease supervision does not violate section 9 of the Kansas Constitution Bill of Rights as applied to Castelli. We thus reject Castelli's argument under the Eighth Amendment as well.

Affirmed.